JAMES S. TERRELL, ESQ. (SBN: 170409)
Law Office of James S. Terrell
15411 Anacapa Road
Victorville, California 92392
Telephone No. (760) 951-5850
Fax No. (760) 952-1085
E-mail: jim@talktoterrell.com

SHARON J. BRUNNER, ESQ. (SBN: 229931)
Law Office of Sharon J. Brunner
14393 Park Avenue, Suite 100
Victorville, CA 92392
Telephone No. (760) 243-9997
Fax No. (760) 843-8155
E-mail: sharonjbrunner@yahoo.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN SOARES, TIFFANY SOARES, ALISSA VARNEDOE, JAYDA MACCASKIE AS MOTHER AND NATURAL GUARDIAN FOR MINOR CHILDREN "J.V." AND "S.V.," CHILDREN OF DECEDENT, AND SUCCESSORS OF INTEREST, HEIRS. ) | **Case No.: 2:17-cv-00924-RGK-AS** |
| ) | |
| Plaintiffs, ) | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| vs. ) | **[DEMAND FOR JURY TRIAL]** |
| ) | *Honorable R. Gary Klausner* |
| COUNTY OF LOS ANGELES, ) | *Courtroom 850* |
| SHERIFF JIM MCDONNELL, ) | |
| CAPTAIN JACK EWELL, ) | |
| SERGEANT SEAN BURKE, DEPUTY ) | |
| ANTHONY GEISBAUER, DEPUTY ) | |

JUAN RODRIQUEZ, DEPUTY )
EDSON SALAZAR, DEPUTY )
DONALD MCNAMARA, DEPUTY )
STEVEN PRATT, DEPUTY IAN )
STADE, DEPUTY DANIEL WELLE, )
DEPUTY WHEELER, COMMANDER )
PATRICK MAXWELL, and DOES 1- )
10 )
                                    )
              Defendants. )
                                    )
_____)

## JURISDICTION

1.      This action arises under Title 42 of the United States Code,
§1983. Jurisdiction is conferred upon this Court by Title 28 of the United States
Code, §§1331 and 1343. The unlawful acts and practices alleged herein
occurred in the County of LOS ANGELES, California, which is within this judicial
district.

## PARTIES

2.      Plaintiff **DAWN SOARES** is and was at all times mentioned
herein the mother of Decedent, Leroy Genaro Varnedoe. Plaintiff DAWN
SOARES is a citizen of the United States residing in the City of Los Angeles in
California. All Plaintiffs and Decedent are readily recognizable as African-
American.

3.      Plaintiff **TIFFANY SOARES** is and was at all times
mentioned herein the sister of Decedent, Leroy Genaro Varnedoe. Plaintiff
TIFFANY SOARES is a citizen of the United States residing in the City of Los
Angeles in California.

4.      Plaintiff **ALISSA VARNEDOE** is and was at all times
mentioned herein the adult daughter of Decedent, Leroy Genaro Varnedoe.

Plaintiff Alissa Varnedoe is a citizen of the United States residing in the City of Los Angeles in California. Plaintiff Alissa Varnedoe is Decedent, Leroy Genaro Varnedoe's successor-in-interest.

5.     Minor Plaintiff **"J.V."** is the minor daughter of Decedent, Leroy Genaro Varnedoe. Minor Plaintiff "J.V." is a citizen of the United States, residing in the City of Santa Clarita in California.  She is being represented in this action by her mother and Guardian Ad Litem, JAYDA MACCASKIE. Minor Plaintiff "J.V." is Decedent, Leroy Genaro Varnedoe's successor-in-interest.

6.     Minor Plaintiff **"S.V."** is the minor daughter of Decedent, Leroy Genaro Varnedoe. Minor Plaintiff "S.V." is a citizen of the United States, residing in the City of Santa Clarita in California. She is being represented in this action by his mother and Guardian Ad Litem, JAYDA MACCASKIE. Minor Plaintiff "S.V." is Decedent, Leroy Gerano Varnedoe's successor-in-interest.

7.     Defendant **COUNTY OF LOS ANGELES** ("COUNTY") is a municipal corporation, duly organized and existing under the laws of the State of California. Under its authority, the COUNTY operates the LOS ANGELES County Sheriff's Department.

8.     At all times mentioned herein, Defendant **JIM MCDONNELL** ("MCDONNELL") was employed by Defendant COUNTY as Sheriff for the COUNTY. He is being sued in his individual capacity and in his official capacity as Sheriff for the COUNTY.

9.     Defendant **JACK EWELL** ("EWELL"), is and was at all times herein mentioned a Captain employed by Defendant COUNTY OF LOS ANGELES. He is being sued individually and in his official capacity as a Captain for the COUNTY.

10.     Defendant **SEAN BURKE** ("BURKE") is and was at all times herein mentioned a Sergeant employed by Defendant COUNTY OF LOS ANGELES. He is being sued in his individual capacity and in his official capacity

as a Sergeant for the COUNTY.

11.     Defendant **ANTHONY GEISBAUER** ("GEISBAUER") is and was at all times mentioned herein a Deputy employed by the COUNTY OF LOS ANGELES. He is being sued in his individual capacity and in his official capacity as a Deputy for the COUNTY.

12.     Defendant **JUAN RODRIQUEZ** ("RODRIQUEZ") is and was at all times mentioned herein a Deputy employed by the COUNTY OF LOS ANGELES. He is being sued in his individual capacity and in his official capacity as a Deputy for the COUNTY.

13.     Defendant **EDSON SALAZAR** ("SALAZAR") is and was at all times mentioned herein a Deputy employed by the COUNTY OF LOS ANGELES. He is being sued in his individual capacity and in his official capacity as a Deputy for the COUNTY.

14.     Defendant **MARK MCNAMARA ("**MCNAMARA") is and was at all times mentioned herein a Deputy employed by the COUNTY OF LOS ANGELES. He is being sued in his individual capacity and in his official capacity as a Deputy for the COUNTY.

15.     Defendant **STEVEN PRATT** ("PRATT") is and was at all times mentioned herein a Deputy employed by the COUNTY OF LOS ANGELES. He is being sued in his individual capacity and in his official capacity as a Deputy for the COUNTY.

16.     Defendant **IAN STADE** ("STADE") is and was at all times mentioned herein a Deputy employed by the COUNTY OF LOS ANGELES. He is being sued in his individual capacity and in his official capacity as a Deputy for the COUNTY.

17.     Defendant **DANIEL WELLE** ("WELLE") is and was at all times mentioned herein a Deputy employed by the COUNTY OF LOS ANGELES. He is being sued in his individual capacity and in his official capacity as a Deputy

for the COUNTY.

18.    Defendant **DEPUTY WHEELER** ("WHEELER") is and was at all times mentioned herein a Deputy employed by the COUNTY OF LOS ANGELES. He is being sued in his individual capacity and in his official capacity as a Deputy for the COUNTY.

19.    Defendant **COMMANDER PATRICK MAXWELL** ("MAXWELL") is and was at all times mentioned herein a Commander employed by the COUNTY OF LOS ANGELES.  He is being sued in his individual capacity and in his official capacity as a Commander for the COUNTY.

20.    Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1  through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiffs are informed and believe and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of DOES 1-10, inclusive, when they have been ascertained.

21.    In engaging in the conduct described herein, Defendants acted under the color of law and in. the course and scope of their employment with the COUNTY. In engaging in the conduct described herein, Defendants exceeded the authority vested in them as peace officers under the United States and California Constitutions and as peace officers employed by Defendant COUNTY.

### STATEMENT OF FACTS

22.    On the morning of February 6, 2015, Decedent VARNEDOE was killed at a house located in Lancaster, California by Defendant LOS ANGELES COUNTY Sheriff's Office personnel. VARNEDOE's death was horrific and wholly unnecessary. VARNEDOE's death is directly attributed to the actions of the Defendants whereby excessive and unreasonable force "gassing

method" was deployed. Defendants used massive and excessive amounts of cold and hot containers of gas in an attempt to flush or smoke VARNEDOE out of the house.  A "burn safe" tear gas canister is an incendiary device that functions essentially as a bomb, when the area is saturated with gas and makes contact with materials such as furniture. The device was thrown inside the residence and allowed to set fire to a couch and upholstery inside the residence. The fire ultimately engulfed the home located at 16335 Gadsden Ave. in Lancaster, California. Decedent VARNEDOE died from smoke-inhalation, burns to his body and ingestion of chemicals.

23.     In fact, it was Defendants' stated intention to use the gas to "smoke" Decedent out of the house. Although Defendants contend that they possessed a warrant authorizing service of a search warrant on the Decedent, the extreme amount of gas in combination with the use of a dangerous hot gas canisters known to start fires when in contact with carpet and furniture, was a departure from accepted law enforcement use of these chemicals. Defendants had or should have had knowledge of the dangerous consequences of their actions.

24.     On February 5, 2015 at 9:00 a.m. DEFENDANT DEPUTY WELLE initiated surveillance on the property located at 45335 Gadsden Ave, Lancaster, California. Defendant WELLE had information from various sources that the Decedent VARNEDOE had active warrants and possessed firearms. Defendant WELLE passed on information from a confidential source and hearsay from a bail bond agent to SWAT and Special Enforcement Bureau ("SEB"). It is believed that this unreliable information far exaggerated and distorted the situation and created a false narrative as to the situation and status of the Decedent.

25.     At 5:45 pm various LASD deputies responded and surrounded the residence and aided by aero support used loud speakers to order the occupants to exit the house. Three women and a child exited. All three informed the police that the Decedent was sleeping inside the residence and further informed LASD

1    that VARNEDOE was passed out and described no danger or agitated state,

2    contrary to the information provided by Defendant DEPUTY WELLE.

3            26.    At all times throughout this entire event the Decedent was

4    never seen nor observed by any law enforcement personnel. There is no evidence

5    to suggest that the Decedent ever made threats to anyone including law

6    enforcement. There is also no evidence to suggest that the Decedent engaged in

7    any aggressive actions to anyone, including law enforcement. Moreover, there is

8    no evidence to suggest that the Decedent barricaded himself inside the house. The

9    Decedent was incapacitated and nonresponsive as described by the female

10   witnesses. The only contact LASD had with the Decendent occurred after the

11   house was burned down. Only then did LASD make contact with a deceased

12   VARNEDOE when his naked, burnt body was located. VARNEDOE was

13   unarmed.

14           27.    In connection with serving the search warrant on 46335

15   Gadsden Ave., Defendant CAPTAIN EWELL, a high-ranking Captain in the LOS

16   ANGELES County Sheriff's Department, determined that the Sheriff's Department

17   SWAT/SEB Team should be deployed to effect entry into the residence. Defendant

18   Commander PATRICK MAXWELL formulated, approved, ratified, and advised

19   Deputies of the plan and SHERIFF MCDONNELL was notified, and approved and

20   ratified the plan to throw in excess of fourteen (14) canisters of gas and a gas bomb

21   into the house where Decedent was residing to "smoke" Decedent out from inside

22   the residence.  Knowing that throwing in excess of fourteen (14) canisters of gas

23   was likely to suffocate Decedent and spark a fire, PATRICK MAXWELL devised,

24   approved, and ratified the plan to throw the many gas canisters inside the home as

25   a way to intentionally harm Decedent.  EWELL condoned and ratified the

26   excessive use of gas and unsafe incendiary devices, which he knew or should have

27   known would cause a fatal fire.  Captain EWELL was also aware of Commander

28   MAXWELL's penchant and history of burning barricaded suspects to death by the

1  use of chemical agents and pyrotechnics but went along with the deadly plan

2  anyway.  Sheriff MCDONNELL knew or should have known Commander

3  MAXWELL had a penchant and history of burning barricaded suspects as well.

4        28.    The LASD SWAT team or SEB surrounded the house where

5  Decedent was staying. LASD sent a robot in the house. The robot did not detect the

6  presence of the Decedent in the house. Despite the lack of evidence that

7  VARNEDOE was in the house, the Defendants continued to carry out their highly

8  dangerous plans. Based on the statements of neighbors present at the scene,

9  Defendants reasonably believed Decedent was present inside the residence.

10  Although Defendants were informed that Decedent might be mentally impaired or

11  intoxicated, they received no indication that Decedent was a threat to himself or

12  anyone else. Decedent did not or was unable to communicate with Defendants. The

13  Defendants never provided a phone or mechanism by which the Decedent could

14  have communicated with law enforcement.

15        29.    The on-scene leaders of this debacle, including PATRICK

16  MAXWELL and other Defendants, decided to order that a hot tear gas

17  (euphemistically, somewhat misleadingly, called a ""burn safe" device") be thrown

18  inside and ignited in the front living room where Decedent was residing. The

19  interior of the living room was visible to Defendants through a large window that

20  faced out onto the street. Furniture, including two couches and other flammable

21  items were also visible through the front living room.

22        30.    Commander PATRICK MAXWELL ordered, condoned, and

23  ratified officers to throw the many gas devices inside the home knowing it would

24  likely start a fire and cause Decedent to be unable to exit his home.  In fact,

25  Commander PATRICK MAXWELL has implemented this tactic numerous times

26  before and similarly caused the death of others.

27        31.    Commander PATRICK MAXWELL also knew that the "burn

28  safe" device used to deploy the chemical agents was an "after market" product that

was dangerous and caused fires.  Despite this knowledge, MAXWELL allowed this device to be used even though he knew the company that manufactured this device was owned and operated by a current member in his SWAT Team (Sgt. Thomas Giandomenico) who was involved in this incident.

32.    Based on his experience and knowledge of chemical agents, Commander MAXWELL knew that the chemical agent used in this incident that caused this fatal fire had explicit warnings from the manufacturer that it not be used indoors due to the fact that it caused fires, yet he approved of its use anyway.

33.    The reasoning of the on-scene Defendants for deploying in excess of fourteen (14) canisters of tear gas in the residence was that they had previously employed the gassing in the same manner and it had previously effectively "smoked out" people who had been hiding inside buildings where they deployed this type of firebomb. Thus, based on Defendant COUNTY's practice, and written or unwritten policy, Defendants ordered the incendiary gas canister to be thrown inside the residence, near multiple obvious fire hazards, with no immediate means available to extinguish the bomb or fires it might set inside the residence, while reasonably aware that at least one person, not believed to be armed or threatening, was inside the residence, recalcitrant to law enforcement commands to exit the residence, possibly impaired or under the influence, and likely to die should a fire be set inside the residence.

34.    In order to throw the gas inside the residence, Defendant Deputies broke the front living room window, and Defendant Deputies threw the hot gas through the broken window into the front living room, on or near the two obviously flammable sofas. Any visual observation into the window of the front living room would have disclosed obvious fire hazards noted herein. Although there was no indication Decedent or anyone other than law enforcement was armed, Defendants used their firearms to provide cover for the team that broke the window and put massive amounts of gas inside the residence then placed the hot

1  incendiary device inside.

2         35.    The "gas plan," as devised, condoned, approved, and ratified by

3  Commander PATRICK MAXWELL, was initiated by LASD at 11:00 pm on

4  February 5, 2015. Massive amounts of gas were fired into the residence. Defendant

5  DEPUTY GEISBAUER tossed a ""burn safe"" gas. DEPUTY SALAZAR

6  deployed a tomahawk gas thrown through the southwest bedroom window and the

7  bathroom window. DEPUTY SALAZAR fired other rounds into the attic.

8  DEPUTY MCNAMARA fired three additional rounds into the attic. Defendant

9  DEPUTY RODRIQUEZ deployed a tomahawk through the window of the door on

10  the north side of the residence. During this outrageous and unwarranted gas attack,

11  Defendant SARGENT SEAN BURKE supervised and directed the attack.

12         36.    Defendant DEPUTY PRATT, Defendant DEPUTY STADE

13  and Defendant DEPUTY WHEELER assisted the other named defendants in the

14  tactical operations and carrying out the gas attack of the residence, along with

15  Does 1-10.

16         37.    Then, the Defendants simply waited. No one forced entry to

17  ensure the device did not set a fire. No one attempted to prevent the hot gas from

18  igniting a fire. No steps were taken in the placement of the hot gas to reduce or

19  eliminate the possibility of a fire being set by the device's ignition.

20         38.    Defendants waited an extended period of time for the Fire

21  Department arrival. The delay wasn't because the Fire truck was a great distance

22  from the location, but because Defendants had blocked access to the Decedent and

23  the property.  By the time the Fire Department had the fire controlled, about an

24  hour later, Decedent was dead from smoke inhalation and other causes related to

25  the actions of the Defendants. He had been hiding in a crawlspace above the

26  kitchen, according to the location of his body. No weapon was found near the

27  Decedent's body.

28  / /

39.     Plaintiffs allege Defendants grossly violated the training and standards involved in making reasonable searches and seizures of subjects, and especially in using the tomahawk "burn safe" in the manner described herein, which also violated standard training, established legal precedent, and manufacturer guidelines concerning the use of the massive gassing. These violations by Defendants caused Decedent's death.

40.     Plaintiffs further allege that Decedent's death was the proximate result of Defendant COUNTY's failure to reasonably train their peace officers in the proper and reasonable use of force, effecting entries into residences, the proper and reasonable deployment of flash bang grenades, the proper and reasonable apprehension of barricaded subjects, and in responding to mentally impaired or intoxicated subjects. Plaintiffs further allege that these substantial failures reflect Defendant COUNTY's policies implicitly ratifying and/or authorizing the use of excessive force, unreasonable seizures, unreasonable uses of the flash bang grenade, and the failure to render medical care or provide for medical care to subjects placed in emergency medical jeopardy by its peace officer employees.

41.     The killing of Decedent, described herein was brutal, malicious, and done without just provocation or cause, proximately causing Decedents' injuries and resulting damages.

## DAMAGES

42.     Plaintiffs were physically, mentally, emotionally and financially injured and damaged as a proximate result of Decedent's wrongful death, including, but not limited to, the loss of Decedent's familial relationships, comfort, protection, companionship, love, affection, solace, and moral support. In addition to these damages, Plaintiffs are entitled to recover for the reasonable value of funeral and burial expenses, pursuant to C.C.P. §§377.60 and 377.61.

/ /

43.   Plaintiffs are entitled to recover wrongful death damages pursuant to C.C.P. §§377.60 and 377.61 and Probate Code§6402(b).

44.   Pursuant to C.C.P. §§ 377.30, 377.32, and 377.34, Plaintiffs are further entitled to recover for damages incurred by Decedent before he died as the result of being assaulted and battered, for deprivation without due process of Decedent's right to life, and to any penalties or punitive damages to which Decedent would have been entitled to recover, had he lived.  Furthermore, under 42 U.S.C.§1983,   Plaintiffs are entitled to recover damages incurred by Decedent consisting of pain, suffering, and disfigurement prior to Decedent's death.

45.   As a further direct and proximate result of the negligence, unreasonable seizure and deliberate indifference of Defendants, and each of them, Plaintiffs have been deprived of Decedent's financial support.

46.   The conduct of the Defendant Deputies was malicious, wanton, and oppressive. Minor Plaintiffs are Decedent's successor in interest, are therefore entitled to an award of punitive damages against said individual defendants. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights, and the rights of Decedent, under the law. Plaintiffs are therefore entitled to recover all attorneys' fees incurred in relation to this action pursuant to Title 42 United States Code §1988.

**FIRST CAUSE OF ACTION**
**(Wrongful Death 42 U.S.C. §1983**
**Violation of Decedent's Fourth Amendment Rights Against**
**Unreasonable Search and Seizure)**

47.   Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 46 of this Complaint.

48.   Defendants acted under color of law by killing Decedent without lawful justification and subjecting Decedent to excessive force thereby

depriving Plaintiffs and the Decedent of certain constitutionally protected rights, including, but not limited to:

        a.    The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

      WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Violations of Plaintiffs' Civil
### Rights to Familial Relationship - 42 U.S.C. §1983)

    49    Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 48 of this Complaint.

    50.    Defendants, acting under color of law, and without due process of law deprived Plaintiffs of their right to a familial relationship by seizing Decedent by use of unreasonable, unjustified, and/or deadly force and violence, causing injuries which resulted in Decedent's death, all without provocation and did attempt to conceal their extraordinary use of force and hide the true cause of Decedent's demise to deprive Plaintiffs of their right to seek redress, all in violation of rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution.

      WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION
### (Monell - 42 U.S.C. §1983)

    51.    Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 50 of this Complaint.

    52.    Plaintiffs are informed and believe and thereon allege that high-ranking COUNTY OF LOS ANGELES officials, including high ranking police

supervisors such as Defendant MCDONNELL, EWELL, Does 1 through 10, and/or each of them, knew and/or reasonably should have known about repeated acts of misconduct by Defendants, and DOES 1-10, and/or each of them.

53.     Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants MCDONNELL, EWELL, Does 1 through 10 and/or each of them, approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by said defendants. The LASD had a history of racial animus and had been cited by the United States Department of Justice for the pattern of aggressive, excessive force on African American and Section 8 Housing to African Americans.

54.     Specifically, Commander PATRICK MAXWELL had a history and reputation at the Los Angeles County Sheriff's Department for using excessive force against suspects.  Commander PATRICK MAXWELL has been involved in countless incidents of excessive force, including multiple incidents similar to here where Deputies caused a barricaded suspect to be burned alive due to the use of gas and other devices, such as road flares.  Despite PATRICK MAXWELL's repeated use of excessive force, PATRICK MAXWELL was promoted and made Commander at the Los Angeles County Sheriff's Department and given the duty to formulate and implement SWAT plans and tactics.

55.     Plaintiffs are further informed and believe and thereon allege that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by, Commander PATRICK MAXWELL and DOES 1-10 and/or each of them, Defendant, Commander PATRICK MAXWELL, DOES 1-10, and/or each of them, ratified and encouraged these officers to continue their course of misconduct and caused these officers' lack of training, resulting in the violation of the Plaintiffs' and Decedent's rights as alleged herein.

/ /

56.     Plaintiffs further allege Defendants, DOES 1-10, and/or each of them, were notice of Constitutional defects in their training of COUNTY OF LOS ANGELES peace officers, including, but not limited to, in the deployment, placement, use, and/or ignition of the flash bang grenade, responding to mentally impaired or intoxicated subjects, responding to barricaded subjects, and in providing for medical care for subjects placed in harm or jeopardy by the actions COUNTY OF LOS ANGELES peace officers.

57.     The aforementioned acts and/or omissions and/or deliberate indifference by high ranking COUNTY OF LOS ANGELES officials, including high ranking COUNTY OF ANGELES Sheriff's Department supervisors, Defendants SHERIFF JIM MCDONNELL,  DOES 1-10, and each of them resulted in the deprivation of Plaintiffs' and Decedents constitutional rights including, but not limited to, the following:

a.     The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b.     The right to a familial relationship, as guaranteed by the Fourteenth Amendment to the United States Constitution.

58.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

/ /

/ /

/ /

/ /

/ /

**FOURTH CAUSE OF ACTION**

**(Survival Action: Violation of Decedents Civil Rights**

**42 U.S.C. §1983)**

**(ALISSA VARNEDOE, "J.V." and "S.V.",**

**As Decedent's Successor-In-Interest)**

59.     Plaintiffs hereby reallege and incorporate by reference herein paragraphs 1 through 58 of this Complaint.

60.     The foregoing claim for relief arose in Decedent's favor, and Decedent would have been the Plaintiff with respect to this claim if he had lived.

61.     Defendants acted under color of law in killing Decedent without lawful justification and subjecting Decedent to excessive force and unreasonable search and seizure, thereby depriving Plaintiffs and the Decedent of certain constitutionally protected rights, including, but not limited to:

a.     The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b.     The right to a familial relationship, as guaranteed by the Fourteenth Amendment to the United States Constitution.

62.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

<u>PRAYER</u>

WHEREFORE, Plaintiffs pray for relief, as follows:

1.     For general damages in a sum of $50,000,000.00;

2.     For special damages in a sum according to proof;

3.     For punitive damages in a sum according to proof;

4.      For reasonable attorney's fees pursuant to 42 U.S.C. §1988;

5.      For statutory civil penalties;

6.      For cost of suit herein incurred; and

7.      For such other and further relief as the Court deems just and proper.


Dated:    November 9, 2017         By:   /s/ James S. Terrell
                                         James S. Terrell, Esq.
                                         Attorney for Plaintiffs


Dated:    November 9, 2017         By:   /s/ Sharon J. Brunner
                                         Sharon J. Brunner, Esq.
                                         Attorney for Plaintiffs



## **JURY TRIAL DEMANDED**

Plaintiff demands a jury trial.

Dated:    November 9, 2017         By:   /s/ James S. Terrell
                                         James S. Terrell, Esq.
                                         Attorney for Plaintiffs


Dated:    November 9, 2017         By:   /s/ Sharon J. Brunner
                                         Sharon J. Brunner, Esq.
                                         Attorney for Plaintiffs