HAROLD G. BECKS, State Bar No. 59126
hbecks@beckslaw.com
DOUGLAS L. DAY, State Bar No. 92581
dougday@beckslaw.com
HAROLD G. BECKS & ASSOCIATES
3250 Wilshire Boulevard Suite 708
Los Angeles, California 90010
Telephone: (213) 385-9852
Fax: (213) 385-1370

Attorneys for Defendants
COUNTY OF LOS ANGELES; SHERIFF JIM MCDONNELL; COMMANDER
PATRICK MAXWELL; CAPTAIN JACK EWELL; SERGEANT SEAN BURKE;
DEPUTY ANTHONY GEISBAEUER; DEPUTY JUAN RODRIGUEZ; DEPUTY
EDSON SALAZAR; DEPUTY DONALD MCNAMARA; DEPUTY STEVEN
PRATT; DEPUTY IAN STADE; DEPUTY DANIEL WELLE; AND DEPUTY
JAMES WHEELER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN SOARES, TIFFANY SOARES, ALISSA VARNEDOE, JAYDA MACCASKIE AS MOTHER AND NATURAL GUARDIAN FOR MINOR CHILDREN "J.V." AND "S.V.", CHILDREN OF DECEDENT, AND SUCCESSORS OF INTEREST, HEIRS.<br><br>        Plaintiffs,<br><br>      v.<br><br>COUNTY OF LOS ANGELES, SHERIFF JIM McDONNELL, CAPTAIN JACK EWELL, SERGEANT SEAN BURKE, DEPUTY ANTHONY GEISBAUER, DEPUTY JUAN RODRIGUEZ, DEPUTY EDSON SALAZAR, DEPUTY DONALD MCNAMARA, DEPUTY STEVEN PRATT, DEPUTY IAN STADE, DEPUTY DANIEL WELLE, DEPUTY WHEELER; and DOES 1 - 10,<br><br>        Defendants. | **CASE NO.: 2:17-cv-00924 RGK-AS**<br><br>**Assigned to Hon. R. Gary Klausner**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' MONELL CLAIM (THIRD CLAIM FOR RELIEF); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed Concurrently With Statement Of Uncontroverted Facts; Declaration Of Douglas L. Day Re Evidence; and [Proposed] Order]<br><br>DATE: April 16, 2018<br>TIME: 9:00 a.m.<br>CTRM: 850, 8th Floor |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 16, 2018 at 9:00 a.m. or as soon thereafter as the matter may be heard, Defendants County of Los Angeles, Sheriff Jim McDonnell, Commander Patrick Maxwell, Captain Jack Ewell, Sergeant Sean Burke, Deputy Anthony Geisbauer, Deputy Juan Rodriguez, Deputy Edson Salazar, Deputy Donald McNamara, Deputy Steven Pratt, Deputy Ian Stade, Deputy Daniel Welle and Deputy James Wheeler ("Defendants") will and do hereby move the above-entitled Court, located at the United States Courthouse, 255 East Temple Street, Los Angeles, California, 90012, Courtroom 850, 8th Floor, for an Order granting partial summary judgment in favor of each of the Defendants, pursuant to Federal Rules of Civil Procedure, Rule 56(a) on Plaintiff's *Monell* Claim on the grounds that the Third Claim for Relief has no merit, there is no triable issue as to any material fact, and that each of the Defendants is entitled to judgment as a matter of law as to this Claim.

This Motion is based upon this Notice, the entire file and papers on file, the attached Memorandum of Points and Authorities, the attached Separate Statement of Uncontroverted Facts, the Declaration of Douglas L. Day Re Evidence, and upon such other and further evidence as may be presented at the time of the hearing of this Motion.

///
///
///

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' MONELL CLAIM**

1    **Conference of counsel prior to filing motion (Local Rule 7-3)**:  This

2   Motion is made following the conference of counsel pursuant to L.R. 7-3 which

3   took place on March 7, 2018.  The conference did not succeed in resolving the

4   issues regarding Plaintiff's *Monell* claim which are the subject of this Motion.

5

6   DATED:  March 14, 2018                HAROLD G. BECKS & ASSOCIATES

7

8                                          By:   _____/s/ Douglas L. Day_____
                                                 HAROLD G. BECKS
9                                                DOUGLAS L. DAY
                                                 Attorneys for DEFENDANTS
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' MONELL CLAIM**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF FACTS ......................................................................... 1

III.   STANDARD FOR GRANTING SUMMARY JUDGMENT ......................... 4

IV.    PLAINTIFFS' *MONELL* ALLEGATIONS ................................................. 5

       A.    Allegations of The First Amended Complaint ........................... 5

       B.    Plaintiffs' Discovery Responses ............................................... 6

V.     SUMMARY JUDGMENT IS WARRANTED WHERE THERE IS NO
       EVIDENCE THAT THE COUNTY OF LOS ANGELES HAD ANY
       POLICY, CUSTOM OR PRACTICE THAT CAUSED ANY
       CONSITUTIONAL VIOLATION OR ACTED WITH DELIBERATE
       INDIFFERENCE ...................................................................................... 9

       A.    First Path – Plaintiffs Fail To Establish Any Custom, Practice or
             Policy ....................................................................................... 11

       B.    Second Path – Plaintiffs Fail To Establish The Failure To Train
             or The Failure To Supervise ................................................... 15

VI.    CONCLUSION ...................................................................................... 18

1

## **TABLE OF AUTHORITIES**

2

Cases

3    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................4, 5

4    *Anderson v. Warner*, 451 F. 3d 1063, (9th Cir. 2006)...................................11, 16, 18

5    *Baker v. McCollan*, 442 U.S. 137, n. 3 (1979) ...................................................10

6    *Bd. Of Cty. Comm'rs of Bryan Cty. V. Brown*, 520 U.S. 397, (1997)...............10, 15

7    *Blankenhorn v. City of Orange,* 485 F. 3d 463, (9th Cir. 2007).....................13, 16, 18

8    *Burke v. Cty of Alameda*, 586 F.3d 725, (9th Cir. 2009).........................................11

9    *Castro v. Cty. Of Los Angeles*, 833 F. 3d 1060 (9th Cir. 2016) ..............................10

10    *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)...............................................4, 5

11    *Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994)....................................................10

12    *City of Canton v. Harris*, 489 U.S. 378 (1989) ..............................................11, 13, 18

13    *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) .........................................14

14    *Connick v. Thompson*, 563 U.S. 51 (2011).........................................................17

15    *Cortez v. County of Los Angeles*, 294 F. 3d 273 (9th Cir. 2002) ...........................14

16    *Davis v. City of Ellensburg*, 869 F.2d 1230, (9th Cir. 1989)...........................12, 16

17    *Dougherty v. City of Covina*, 654 F. 3d 892 (9th Cir. 2011)..................................16

18    *Ellins v. City of Sierra Madre*, 710 F. 3d 1049 (9th Cir. 2013) ...........................14

19    *Flores v. Cty. of Los Angeles*, 758 F. 3d 1154 (9th Cir. 2014)...............................17

20    *Gibson v. Cty. Of Washoe*, 290 F. 3d 1175 (9th Cir. 2002) .........................10, 11, 16

21    *Goldstein v. City of Long Beach*, 715 F. 3d 750 (9th Cir. 2013)..............................14

22    *Graham v. Connor*, 490 U.S. 386 (1989) ..........................................................10

23    *Gravelet-Blondin v. Shelton*, 728 F. 3d 1086 (9th Cir. 2013) ...................................10

24    *Hughes v. Kisela*, 841 F. 3d 1081 (9th Cir. 2016)...............................................5

25    *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472 (9th Cir. 1986).....................4

26    *Lytle v. Carl*, 382 F. 3d 978 (9th Cir. 2004) ......................................................14

27    *MacEachern v. City of Manhattan Beach*, 623 F.Supp. 2d 1092 (C.D. Cal 2009)...12

28

ii

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................. 5

*McDade v. West*, 223 F. 3d 1135 (9th Cir. 2000) ........................................... 12

*Merritt v. County of Los Angeles*, 875 F. 2d. 765 n. 10 (9th Cir. 1989) .... 1, 13, 14, 18

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427 85 L.Ed. 791 (1985) .................................................................................................... 13

*Streit v. County of Los Angeles*, 236 F. 3d 552 (9th Cir. 2001) ................................ 14

*T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626 (9th Cir. 1987) .................................................................................................... 4

*Trevino v. Gates*, 99 F. 3d 911 (9th Cir. 1996) .................................................. 12, 17

*Ulrich v. City & Cty of San Francisco*, 308 F.3d 968 (9th Cir. 2002) ...................... 12

*Velazquez v. City of Long Beach*, 793 F. 3d 1010 (9th Cir. 2015) ........................... 10

*Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054 (9th Cir. 2002) ........................... 4

*Waggy v. Spokane Cty.*, 594 F.3d 707 (9th Cir. 2010) ................................................ 11

*Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925 (N.D. Cal. 2014) .......................... 17

Statutes

Rule 56(a) .................................................................................................... 2, 4

Section 1983 .................................................................................................... 9

Other Authorities

Ninth Circuit Model Instruction 9.6 ........................................................... 14

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' MONELL CLAIM**

I.      **INTRODUCTION**

The *Monell* claim of Plaintiffs Dawn Soares, Tiffany Soares, Alissa Varnedoe, Jayda MacCaskie, J.V. and S.V. ("Plaintiffs") is uniquely ripe for disposition for summary judgment because there are no triable issues of material fact and Plaintiffs have no evidence of any official policy, custom or practice of Defendant County of Los Angeles ("Defendant" or "County") that actually caused any constitutional violation of decedent Leroy Varnedoe or the Plaintiffs.  Plaintiffs have no evidence of any inadequate training program on the part of the County or evidence of any "deliberate indifference".

In fact, the only evidence Plaintiffs present is the "fact" of this particular incident on February 5, 2015 in which Leroy Varnedoe – an admitted gang member with multiple prior felonies – died when he barricaded himself in a residence in Lancaster, California rather that peacefully surrender to Los Angeles County Sheriff's Deputies who sought to arrest him on two outstanding warrants.

Plaintiffs have no evidence as to any other claim or similar incident.  Not only is evidence of such other claims and incidents essential in order for Plaintiffs to establish their *Monell* Claim, but any purported evidence of the specific Sheriff's Deputies' alleged wrongful conduct February 5, 2015 itself is insufficient.

> "Mere proof of a single incident of errant behavior is a clearly
> insufficient basis for imposing liability on the County."

*Merritt v. County of Los Angeles*, 875 F. 2d. 770 (9th Cir. 1989).

Accordingly, for the reasons set forth herein, Defendants request the Court grant partial summary judgment on Plaintiffs' Third Claim for Relief.

II.     **STATEMENT OF FACTS**

"On February 5, 2015, at 9:00 a.m. DEFENDANT DEPUTY WELLE initiated surveillance on the property located at 4535 Gadsden Ave., Lancaster, California.  Defendant Welle had information from various sources that the

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' MONELL CLAIM**

1  Decedent Varnedoe had active warrants and possessed firearms.  Defendant

2  WELLE passed on information from a confidential source and hearsay from a bail

3  bond agent to SWAT and Special Enforcement Bureau ("SEB")."  First Amended

4  Complaint ("FAC"), ¶ 24. [Docket No. 54]

5         Varnedoe was wanted on two arrest warrants, one for burglary and one for

6  narcotics.  A confidential informant told Deputy Welle that Varnedoe was

7  threatening to assault any law enforcement or bail agents who tried to arrest him.

8  Varnedoe had also been bragging about his new "big gun".  The confidential

9  informant further stated that Varnedoe had been smoking methamphetamine like "a

10 chain smoker smokes cigarettes."

11        "At 5:45 pm various LASD deputies responded and surrounded the residence

12 and aided by aero support used loud speakers to order the occupants to exit the

13 house.  Three women and a child exited."  FAC, ¶ 25.  The three females confirmed

14 that Varnedoe was inside the residence and that he may be sleeping in his bedroom.

15 One stated that he was armed.

16        Deputies started calling Varnedoe's cellular telephone but received no

17 answer.  A total of 78 attempts were made through the evening.

18        While waiting for the arrival of Special Enforcement Bureau at the scene,

19 Deputies from Operation Safe Streets proceeded to discharge a "stun" bag shotgun

20 in an attempt to alert Varnedoe to the Deputies' presence and to gain his

21 compliance.  Public address announcements continued and evacuations of the

22 neighboring homes continued.

23        SEB deployed a Noise Flash Device outside Varnedoe's bedroom to awake

24 Varnedoe, if he was asleep, and to influence communications and obtain his

25 surrender.  There was no response.

26        SEB deployed an Avatar robot into the interior of the residence to search for

27 Varnedoe.  The Avatar located an open and obviously disturbed attic hatch with

28        2

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' MONELL CLAIM**

1   debris actively falling to the floor below.  This observation was confirmation to the
2   Deputies on scene of current movement in the attic by Varnedoe.  This development
3   was of concern because Varnedoe was armed and now had a high vantage point that
4   presented a further danger to the deputies and the surrounding community.

5   After five hours of attempting to persuade Varnedoe to peacefully surrender,
6   SEB devised a tear gas plan and upon observing the open attic hatch initiated that
7   plan. Implementation of tear gas reduces the suspect's ability to fight while placing
8   the Deputies at a tactical advantage to apprehend the suspect in the least
9   confrontational manner possible.

10   The tear gas was deployed through the front of the house by means of a
11   burnsafe device.  A chemical agent canister was placed inside a burnsafe device that
12   is designed to deflect and eliminate spark and to dissipate heat.

13   Shortly after the burnsafe device was thrown into the front room of the house,
14   Deputies noticed a fire near the burnsafe.  Three SEB personnel entered into the
15   residence to extinguish the fire, retrieve the burnsafe and to rescue Varnedoe if he
16   could be located.  The Deputies were unable to remove a couch through the front
17   door that had caught fire.  The Deputies did not locate Varnedoe while inside the
18   residence although Public Address announcements continued telling Varnedoe the
19   house was on hire and he needed to come out.  Since the front of the house was
20   blocked, SEB Deputies made their way to a rear exit of the house. Deputies had to
21   break through the rear door to exit because it was barricaded.

22   Deputies put out the fire using hoses from the Fire Department.  Once the
23   scene was clear, Deputies went inside the residence and found Varnedoe who had
24   apparently fallen from the attic to the floor of the kitchen.  He was deceased.  The
25   autopsy stated that he died of thermal injuries.  He also had methamphetamine in his
26   system.

27   ///

28
3

### III.   <u>STANDARD FOR GRANTING SUMMARY JUDGMENT</u>

Rule 56(a) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The standard for granting summary judgment is essentially the same as for granting a directed verdict.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict."  *Id.*

The moving party has the initial burden of identifying the relevant portions of the record to demonstrate the absence of a fact or facts necessary for one of more essential elements of each cause of action upon which the moving party seeks judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party has sustained its burden, the burden then shifts to the nonmovant to identify specific facts, drawn from materials in the file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256 (A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial.")

Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1478 (9th Cir. 1986). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002).  The non-moving party must instead set forth "*significant probative evidence* tending to support the complaint.*" T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). (emphasis added).

In determining whether a trial issue of material fact exists, the evidence must be considered in the light most favorable to the nonmoving party.  *See Hughes v.*

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' MONELL CLAIM**

1  *Kisela*, 841 F. 3d 1081, 1084 (9th Cir. 2016).  However, summary judgment cannot

2  be avoided by relying solely on "conclusory allegations [in] an affidavit."  *Lujan v.*

3  *Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Matsushita Elec. Indus. Co.*

4  *v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (more than a "metaphysical doubt"

5  is required to establish a genuine issue of material fact).  "The mere existence of a

6  scintilla of evidence in support of the plaintiff's position" is insufficient to survive

7  summary judgment; "there must be evidence on which the [fact finder] could

8  reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

9       A complete failure of proof concerning an essential element of the non-

10  moving party's case necessarily renders all other facts immaterial. *Celotex,* 477 U.S.

11  at 323.

12  **IV.    PLAINTIFFS' *MONELL* ALLEGATIONS**

13       **A.    Allegations of The First Amended Complaint**

14       The Third Claim for Relief (*Monell* Claim) alleges that "high-ranking

15  COUNTY OF LOS ANGELES officials, including high ranking police supervisors

16  such as Defendant [Sheriff Jim] McDonnell; [Captain Jack] Ewell, Does 1 through

17  10, and/or each of them, knew and/or reasonably should have known about repeated

18  acts of misconduct by Defendants, and DOES 1 – 10, and/or each of them."  First

19  Amended Complaint ("FAC"), ¶ 52.

20       Specifically, Plaintiffs contend:

21       "Defendants McDonnell, Ewell, Does 1 through 10, and/or each of them,

22       approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly

23       authorized the continuing pattern and practice of misconduct and/or civil

24       rights violations by said defendants."  FAC ¶ 53.

25       The "continuing pattern and practice of misconduct" alleged by Plaintiffs

26  includes:

27            • "a history of racial animus" by the Los Angeles County Sheriff's

28

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' MONELL CLAIM**

Department "that has been cited by the United States Department of Justice for the pattern of aggressive, excessive force on African American and Section 8 Housing to African Americans," FAC ¶ 53;

- "a history and reputation" of Defendant Commander Patrick Maxwell "for using excessive force against suspects" "including multiple incidents similar to here where Deputies caused a barricaded suspect to be burned alive due to the use of gas and other devices, such as road flares," FAC ¶ 54;

- "deliberate indifference, reckless and/or conscious disregard of the misconduct by, Commander PATRICK MAXWELL and Does 1-10 …ratified and encouraged these officers to continue their course of misconduct and caused these officers' lack of training, resulting in the violation of the Plaintiffs' and Decedent's rights as alleged herein," FAC ¶ 55; and

- Defendants … were [sic] notice of Constitutional defects in their training of COUNTY OF LOS ANGELES peace officers, including, but not limited to, in the deployment, placement, use and/or ignition of the flash bang grenade, responding to mentally impaired or intoxicated subjects, responding to barricaded subjects, and in providing for medical care for subjects placed in harm or jeopardy by the actions of the COUNTY OF LOS ANGELES peace officers," FAC ¶ 56.

B.    **Plaintiffs' Discovery Responses**

During discovery, Defendant Sheriff Jim McDonnell specifically asked Plaintiff Alissa Varnedoe the following:

**"SPECIAL INTERROGATORY NO. 1:**

Identify with specificity any official policy, practice or custom of **DEFENDANT COUNTY OF LOS ANGELES** pursuant to which **YOU**

1    contend **DEFENDANTS** were acting at the time of the **INCIDENT**."

2    A true and correct copy of Defendant Sheriff Jim McDonnell's Special

3    Interrogatories to Plaintiff, Alissa Varnedoe – Set One, is attached hereto as Exhibit

4    "A" and incorporated herein as though set forth in full.

5    Plaintiff Alissa Varnedoe responded *in full* as follows:

6    "<u>RESPONSE TO SPECIAL INTERROGATORY NO. 1:</u>

7    Plaintiffs allege Defendants grossly violated the 4th and 14th

8    Amendment to the U.S. Constitution as well as the training and standard

9    involved in making searches and seizures of subjects, and especially in using

10    the "burn safe" device in the manner described herein, which also violated

11    standard training, established legal precedent, and manufacturer guidelines

12    concerning the use of the massive gassing.  These violations by Defendants

13    caused Decedent's death.

14    Defendants, acting under color of law, and without due process of law

15    deprived Plaintiffs of their right to a familial relationship by seizing Decedent

16    by use of unreasonable, unjustified, and/or deadly force and violence, causing

17    injuries which resulted in Decedent's death, all without provocation and did

18    attempt to conceal their extraordinary use of force and hide the true cause of

19    Decedent's demise to deprive Plaintiffs of their right to seek redress, all in

20    violation of rights, privileges, and immunities secured by the Fourth and

21    Fourteen Amendments to the United States Constitution.

22    Plaintiffs allege that high-ranking COUNTY OF LOS ANGELES

23    officials, including high ranking police supervisors such as Defendant

24    MCDONNELL and EWELL, knew and/or reasonably should have known

25    about repeated acts of misconduct by Defendants.

26    Despite having such notice, Plaintiffs allege that Defendants

27    MCDONNELL and EWELL approved, ratified, condoned, encouraged,

28

7

sought to cover up, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by said defendants. The LASD had a history of racial animus and had been cited by the United States Department of Justice for the pattern of aggressive, excessive force on African American and Section 8 Housing to African Americans.

Specifically, Commander PATRICK MAXWELL had a history and reputation at the Los Angeles County Sheriff's Department for using excessive force against suspects. Commander PATRICK MAXWELL had been involved in countless incidents of excessive force, including multiple incidents similar to here where Deputies caused a barricaded suspect to be burned alive due to the use of gas and other devices, such as road flares. Despite PATRICK MAXWELL's repeated use of excessive force, PATRICK MAXWELL was promoted and made Commander at the Los Angeles County Sheriff's Department and given the duty to formulate and implement SWAT plans and tactics.

Plaintiffs are further informed and believe and thereon allege that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Commander PATRICK MAXWELL, Defendant, Commander PATRICK MAXWELL, ratified and encouraged these officers to continue their course of misconduct and caused these officers' lack of training, resulting in the violation of the Plaintiffs' and Decedent's rights as alleged herein.

Plaintiffs further allege Defendants were on notice of Constitutional defects in their training of COUNTY OF LOS ANGELES peace officers, including, but not limited to, in the deployment, placement, use and/or ignition of the smoke grenade, responding to mentally impaired or intoxicated subjects, responding to barricaded subjects, and in providing for medical care

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' MONELL CLAIM

for subjects placed in harm or jeopardy by the actions COUNTY OF LOS ANGELES peace officers.

The aforementioned acts and/or omissions and/or deliberate indifference by high ranking COUNTY OF LOS ANGELES officials, including high ranking COUNTY OF LOS ANGELES Sheriff's Department supervisors, Defendants SHERIFF JIM MCDONNELL, resulted in the deprivation of Plaintiffs' and Decedents constitutional rights including, but not limited to, the following:

    a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteen Amendments to the United States Constitution;

    b. The right to a familial relationship, as guaranteed by the Fourteenth Amendment to the United States Constitution.

Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution."

A true and correct copy of Plaintiff Alissa Varnedoe's Responses to Defendant Sheriff Jim McDonnell's Special Interrogatories – Set One, is attached hereto as Exhibit "B" and incorporated herein as though set forth in full.

## V.   <u>SUMMARY JUDGMENT IS WARRANTED WHERE THERE IS NO EVIDENCE THAT THE COUNTY OF LOS ANGELES HAD ANY POLICY, CUSTOM OR PRACTICE THAT CAUSED ANY CONSITUTIONAL VIOLATION OR ACTED WITH DELIBERATE INDIFFERENCE</u>

Section 1983 provides for the imposition of liability on any person who, acting under color of state law, deprives another of the rights, privileges, or immunities secured by the Constitution or the laws of the United States. It does not create substantive rights, but rather provides remedies for deprivations of rights

1    established elsewhere in the Constitution or federal laws.  *See Graham v. Connor*,

2    490 U.S. 386, 393-94 (1989) *citing Baker v. McCollan*, 442 U.S. 137, 144 n. 3

3    (1979).

4         A municipality may be liable under 42 U.S.C. § 1983 "only when the

5    municipality inflicts an injury[.]" *Gibson v. Cty. Of Washoe*, 290 F. 3d 1175, 1185

6    (9th Cir. 2002), *cert denied*, 537 U.S. 1106 (2003), *overruled on other grounds by*

7    *Castro v. Cty. Of Los Angeles*, 833 F. 3d 1060 (9th Cir. 2016).  "While local

8    governments may be sued under § 1983, they cannot be held vicariously liable for

9    their employees' constitutional violations."  *Gravelet-Blondin v. Shelton*, 728 F. 3d

10   1086, 1096 (9th Cir. 2013), *cert. denied*, 134 S.Ct. 1292 (2014); *see Velazquez v.*

11   *City of Long Beach*, 793 F. 3d 1010, 1027 (9th Cir. 2015) ("[A municipality] cannot

12   be held liable … on a respondeat superior theory.") (internal quotation marks

13   omitted).  There are at least two paths that "can lead to the conclusion that a

14   municipality has inflicted a constitutional injury."  *Gibson*, 290 F. 3d at 1185.

15   "First, a plaintiff can show that a municipality itself violated someone's rights or

16   that it directed its employee to do so."  *Id*.  "Alternatively, in limited situations, a

17   plaintiff can demonstrate that a municipality is responsible for a constitutional tort

18   committed by its employee, even though it did not direct the employee to commit

19   the tort."  *Id*.

20        Under the first path, a plaintiff seeking to impose liability under *Monell* must

21   "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Bd. Of*

22   *Cty. Comm'rs of Bryan Cty. V. Brown*, 520 U.S. 397, 403 (1997); *see Gibson*, 290

23   F. 3d at 1185.  Under this approach, "[t]he existence of a constitutional injury … is

24   not dependent on the lawfulness of [the officer's] conduct, but instead turns on the

25   reasonableness of the city's general policy[.]"  *Chew v. Gates*, 27 F.3d 1432, 1440

26   (9th Cir. 1994), *cert. denied*, 513 U.D. 1148 (1995).  To prevail under this approach,

27   a plaintiff must show: "(1) that he possessed a constitutional right of which he was

28

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' MONELL CLAIM**

1  deprived; (2) that [the municipality] had a policy; (3) that the policy amounts to

2  deliberate indifference to [plaintiff's] constitutional right; and (4) that the policy is

3  the moving force behind the constitutional violation."  *Anderson v. Warner*, 451 F.

4  3d 1063, 1070 (9th Cir. 2006) (internal quotation marks omitted); *see Burke v. Cty of*

5  *Alameda*, 586 F.3d 725, 734 (9th Cir. 2009) (same).

6       Under the second path, "a plaintiff need not allege that the municipality itself

7  violated someone's constitutional rights or directed one of its employees to do so."

8  *Gibson*, 290 F. 3d at 1186, *citing City of Canton v. Harris*, 489 U.S. 378, 387-89

9  (1989).  Rather, "a plaintiff can allege that through its omissions the municipality is

10  responsible for a constitutional violation committed by one of its employees, even

11  though the municipality's policies were facially constitutional [and] the municipality

12  did not direct the employee to take the unconstitutional action[.]" *Id.*  (emphasis in

13  original); *see Waggy v. Spokane Cty*., 594 F.3d 707, 713 (9th Cir. 2010) (noting that

14  for purposes of *Monell* liability, "a policy can be one of action or inaction" and in

15  order to state a claim based on inaction, "a plaintiff can allege that through its

16  omissions the municipality is responsible for a constitutional violation committed by

17  one of its employees").

18       As discussed, *infra*, Plaintiffs fail to establish *Monell* liability as to the

19  County of Los Angeles using either path.

20       **A.    First Path – Plaintiffs Fail To Establish Any Custom, Practice or**

21            **Policy**

22       A plaintiff can support a *Monell* claim under the first path by showing one or

23  more of the following:  (1) "a longstanding practice or custom which constitutes the

24  standing operating procedure of the local government entity[;]" (2) "that the

25  decision-making official was, as a matter of state law, a final policymaking authority

26  whose edicts or acts may fairly be said to represent official policy in the are of

27  decision[;]" or (3) "that an official with final policymaking authority either

28

**11**

1  delegated that authority to, or ratified the decision, of a subordinate." *Ulrich v. City*

2  *& Cty of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (internal quotation marks

3  omitted).

4       First, and foremost, Plaintiffs **never identify** any "longstanding practice or

5  custom which constitutes the standing operating procedure of the local government

6  entity".   The excerpts quoted in Section III, *supra*, clearly demonstrate that no such

7  policy, custom or practice of the County is in the First Amended Complaint.  Nor do

8  Plaintiffs identify "any official policy, practice or custom" of the County when

9  directly asked in written discovery.  Plaintiff's Responses are only dated two months

10  ago, on January 2, 2018, and but for the first paragraph, are identical to the

11  allegations set forth in the First Amended Complaint (Docket No. 54), and the

12  original Complaint (Docket No. 1).

13       In order for Plaintiffs to demonstrate the existence of a practice or custom for

14  *Monell* purposes, that "custom must be so persistent and widespread that it

15  constitutes a permanent and well settled city policy." *Trevino v. Gates*, 99 F. 3d

16  911, 918 (9th Cir. 1996), *cert. denied*, 520 U.S. 1117 (1997) (internal quotation

17  marks omitted).  "[P]laintiff cannot demonstrate the existence of a municipal policy

18  or custom based solely on a single occurrence of unconstitutional action by a non-

19  policy making employee." *McDade v. West*, 223 F. 3d 1135, 1141 (9th Cir. 2000).

20  Rather, Plaintiffs must present "evidence of other acts by [LASD deputies] to prove

21  that the subject custom is a widespread practice[.]" *Davis v. City of Ellensburg*, 869

22  F.2d 1230, 1235 (9th Cir. 1989), *overruled on other grounds by Beck v. City of*

23  *Upland*, 869 F. 2d 1230 (9th Cir. 1989).

24       **Plaintiffs do not present "evidence of other acts" or any other incidents.**

25       Plaintiffs have not presented any evidence regarding county-wide training

26  procedures or how deputies are generally trained. *MacEachern v. City of Manhattan*

27  *Beach*, 623 F.Supp. 2d 1092, 1107 (C.D. Cal 2009) (holding that deposition

28

**12**

testimony of one officer "cannot form the basis for an argument that there is a widespread inadequacy in training").

The Ninth Circuit has long held that in order to establish a failure to train claim Plaintiffs must "present [] … evidence of prior incidents" of the same character that would have made County officials "aware of the situation such that the County could 'reasonably be said to have been deliberately indifferent to the need for further training.'" *Merritt v. County of Los Angeles*, 875 F. 2d. 765, 771 n. 10 (9th Cir. 1989).  The Court specifically took note that "the only evidence" on the issue of inadequate training" "was the manner in which [Plaintiff Merritt] himself was arrested."

As the Court stated:

> "Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on the County. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 2436-37, 85 L.Ed. 791 (1985); *see also [City of Canton v.] Harris,* 489 U.S. at -, 109 S. Ct. at 1206 ("adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable").

*Merritt v. County of Los Angeles*, *supra*, 875 F. 2d. at 770.

The Ninth Circuit has unequivocally stated that evidence regarding failure to train a single officer is insufficient to establish liability against a municipality. *Blankenhorn v. City of Orange,* 485 F. 3d 463, 484 (9th Cir. 2007) ("[E]vidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy."  The Supreme Court stated that deliberate indifference is shown where the need for "training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 380 (1989).  As an example of such an "obvious" need for

1  training, the court singled out the fact that law enforcement officers must be trained"

2  in the constitutional limitations in the use of deadly force". *Id.* at 390 n. 10.

3  Courts including the Ninth Circuit have found that training programs that are

4  adequate even if the evidence may show the desirability of more or different

5  training. *Merritt v. County of Los Angeles*, supra, 875 F. 2d at 770.

6  Finally, liability may attach only when the official or employee who caused a

7  constitutional violation was acting as a "final policymaker." *Lytle v. Carl*, 382 F. 3d

8  978, 981 (9th Cir. 2004). *See* Ninth Circuit Model Instruction 9.6. Plaintiff has no

9  evidence of action, conduct, involvement or approval by the final policymaker for

10 the Los Angeles County Sheriff's Department in order to impose liability upon

11 Defendant County of Los Angeles. At the time in question, the final policymaker

12 was Sheriff Jim McDonnell.

13 "To hold a local governing body liable for an official's conduct, the plaintiff

14 must first show that the official (1) had final policy making authority concerning the

15 action… at issue; and (2) was the policymaker for the local governing body for the

16 purposes of the particular act." *Goldstein v. City of Long Beach*, 715 F. 3d 750, 753

17 (9th Cir. 2013) (citations omitted).

18 Whether an official is a policymaker for *Monell* purposes is a question of state

19 law for the court, rather that the jury to decide. *City of St. Louis v. Praprotnik*, 485

20 U.S. 112, 123 (1988); *Ellins v. City of Sierra Madre*, 710 F. 3d 1049, 1066 (9th Cir.

21 2013).

22 The Ninth Circuit has determined that the Los Angeles County Sheriff is the

23 final policymaker for purposes of managing the jails and when performing certain

24 law enforcement functions. *See Cortez v. County of Los Angeles*, 294 F. 3d 273,

25 281-283 (9th Cir. 2002); *Streit v. County of Los Angeles*, 236 F. 3d 552, 564 (9th Cir.

26 2001) (Los Angeles County Sheriff is the final policy maker for the Sheriff's

27 Department in its law enforcement capacity for the County of Los Angeles).

28

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' MONELL CLAIM**

1   Plaintiffs have made the unsupported allegation in Paragraph 27 of the FAC

2   that "SHERIFF MCDONNELL was notified, and approved and ratified the plan to

3   throw in excess of fourteen (14) canisters of gas and a gas bomb into the house

4   where Decedent was residing."  However, Plaintiffs have produced no facts or

5   evidence to support this allegation nor have they propounded any discovery to

6   Sheriff McDonnell either in his individual or official capacity.

7   There is no basis for Plaintiffs to sue Sheriff McDonnell since he may only be

8   held liable under § 1983 "if there exists either (1) his or her personal involvement in

9   the constitutional deprivation, or (2) a sufficient causal connection between the

10  supervisor's wrongful conduct and the constitutional violation."  *Starr v. Baca*, 652

11  F.3d 1202, 1207, (9th Cir. 2011). Here, there is neither.

12  **B.      Second Path – Plaintiffs Fail To Establish The Failure To Train or**

13  **The Failure To Supervise**

14  When a plaintiff claims to have suffered a constitutional injury inflicted

15  directly by a municipal employee, but attributable indirectly to a municipal policy,

16  he must prove not only that the employee acted wrongfully, but also that the entity's

17  action with regard to the challenged policy or custom was itself wrongful.  *See*

18  *Gibson*, 290 F. 3d at 1186.  This requires a showing that the relevant municipal

19  decision-makers acted with "deliberate indifference to the risk that a violation of a

20  particular constitutional or statutory right [would] follow the decision."  *Bd. Of Cty.*

21  *Comm'rs of Bryan Cty*., 520 U.S. at 411.  Additionally, a plaintiff must show that

22  this deliberate indifference was the "moving force" behind the plaintiff's injury.  *Id.*

23  at 408.  In other words, a plaintiff proceeding under the second path must show that:

24  (1) "a County employee violated [the plaintiff's] rights;" (2) "the County has

25  customs or policies that amount to deliberate indifference; and (3) "these policies

26  were the moving force behind the employee's violation of [the plaintiff's]

27  constitutional rights."  *Gibson*, 290 F. 3d at 1194; *see Anderson v. Warner*, 451

28  **15**

1  F.3d. 1063, 1070 (9th Cir. 2006) (plaintiff "must show (1) that he possessed a

2  constitutional right of which he was deprived; (2) that the County had a policy; (3)

3  that the policy amounts to deliberate indifference to [plaintiff's] constitutional right;

4  and (4) that the policy is the moving force behind the constitutional violation.")

5  (internal quotation and alteration marks omitted).

6       Plaintiffs contend that the County failed to train and supervise its Deputies.

7  "Failure to train may amount to a policy of deliberate indifference, if the need to

8  train was obvious and the failure to do so made a violation of constitutional rights

9  likely."  *Dougherty v. City of Covina*, 654 F. 3d 892, 900 (9th Cir. 2011), *cert.*

10 *denied*, 133 S.Ct. 1725 (2013) (internal quotation marks omitted).  Likewise, a claim

11 based on failure to supervise "may amount to a policy of deliberate indifference" if

12 it is sufficiently inadequate.  *Id*. at 900 (internal quotation marks omitted).  ***"Mere***

13 ***negligence in training or supervision, however, does not give rise to a Monell***

14 ***claim."***  *Id*. In order for plaintiff to prevail on "a failure to train [claim], he must

15 show that (1) he was deprived of a constitutional right, (2) the [County] had a

16 training policy that amounts to deliberate indifference to the [constitutional] rights

17 of the persons' with whom [its police officers] are likely to come into contact; and

18 (3) his constitutional injury would have been avoided had the [County] properly

19 trained those officers."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir.

20 2007) (alterations in original) (internal quotations marks omitted).  The standard for

21 inadequate supervision is the same as the standard for inadequate training.  *See*

22 *Davis*, 869 F. 2d at 1235 ("We see no principled reason to apply a different standard

23 to inadequate supervision.").

24      In most cases involving failure to train, "[a] pattern of similar constitutional

25 violations by untrained employees is ordinarily necessary to demonstrate deliberate

26 indifference for purposes of failure to train."  *Connick v. Thompson*, 563 U.S. 51, 62

27 (2011) (internal quotation marks omitted).  This is because "[a] municipality's

28

**16**

1   culpability for a deprivation of rights is at its most tenuous where a claim turns on a

2   failure to train." *Id.* at 61.  "Liability for improper custom may not be predicated on

3   isolated or sporadic incidents; it must be founded upon practices of sufficient

4   duration, frequency and consistency that the conduct has become a traditional

5   method of carrying out policy." *Trevino*, 99 F. 3d at 918; *see Flores v. Cty. of Los*

6   *Angeles*, 758 F. 3d 1154, 1158 (9th Cir. 2014) ("The isolated incidents of []

7   wrongdoing by one deputy other that Deputy Doe 1 do not suffice to put the County

8   or [the sheriff] on notice that a course of training is deficient in a particular

9   respect[.]")  (internal quotation marks omitted).  "Thus, when city policymakers are

10  on actual or constructive notice that a particular omission in their training program

11  causes city employees to violate citizens' constitutional rights, the city may be

12  deemed deliberately indifferent if the policymakers choose to retain that program."

13  *Connick*, 563 U.S. at 61.

14       A pattern of constitutional violations are necessary to establish municipal

15  liability.  "[I]n a narrow range of circumstances, a pattern of similar violations might

16  not be necessary to show deliberate indifference." *Connick*, 563 U.S. at 63 (internal

17  quotation marks omitted).  This "narrow range of circumstances" include situations

18  where "the unconstitutional consequences of failing to train could be so patently

19  obvious that a [municipality] could be liable under § 1983 without proof of a pre-

20  existing pattern of violations." *Id*. at 64.

21       Plaintiffs do not present any evidence of a failure to train or supervise by the

22  County or its SEB Deputies.  The cases in which Plaintiffs have successfully

23  asserted single-incident theories of liability "generally involve incidents arising

24  from a ***total*** lack of training, not simply an assertion that a municipal employee was

25  not trained about the specific scenario related to the violation." *Williams v. Cty. of*

26  *Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014) (internal quotation marks

27  omitted).

28

17

1    The Supreme Court has emphasized that "the [proper] focus must be on

2  adequacy of the training program in relation to the tasks the particular officers must

3  perform," and the fact "[t]hat a particular officer may [have been] unsatisfactorily

4  trained will not alone suffice to fasten liability on the city, for the officer's

5  shortcomings may have resulted from factors other than a faulty program."  *City of*

6  *Canton*, 489 U.S. at 390-91; *see Blankenhorn*, 485 F. 3d 484-85 (internal quotation

7  marks omitted).  Plaintiffs' contentions regarding the adequacy of the Sheriff's

8  Department training or supervision of any particular SEB Deputy involved in the

9  February 5, 2015 incident does not substantiate Plaintiffs' *Monell* claim.

10    "Because [Plaintiffs have] limited [their] proof to [the County's failure to

11  train only, [they have not met their] burden to withstand Defendants' motion for

12  summary judgment."  *Blankenhorn*, 485 F. 3d at 484; *see, e.g. Merritt v. Cty of Los*

13  *Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) ("Merritt did not present any evidence

14  indicating that the sheriff's department's training program regarding the use of force

15  was in any way inadequate…  Indeed, the only evidence presented by Merritt on this

16  issue was the manner in which he himself was arrested."); *Warner*, 451 F. 3d at

17  1070 (concluding that that plaintiff did not "show[] that the County's asserted

18  deficiencies in hiring, training and supervision, if any amount to a policy reflected

19  deliberate indifference" (internal quotation marks omitted); *Trevino*, 99 F. 3d at 920

20  (a court "need not analyze whether the alleged policy or custom was the cause in

21  fact and the proximate cause of the constitutional deprivation" when the plaintiff

22  failed to establish the existence of a custom or policy).

23  **VI.    CONCLUSION**

24    For the reasons set forth above and in the Separate Statement of

25  Uncontroverted Facts, Defendants request the Court grant partial summary judgment

26  on Plaintiff's *Monell* Claim (Third Claim for Relief) in favor of Defendants and

27  against Plaintiffs.

28

1  DATED:  March 14, 2018                    HAROLD G. BECKS & ASSOCIATES

2

3                                      By:   /s/ Douglas L. Day
                                              HAROLD G. BECKS
4                                             DOUGLAS L. DAY
                                              Attorneys for Defendants
5                                             COUNTY OF LOS ANGELES;
                                              SHERIFF JIM MCDONNELL;
6                                             COMMANDER PATRICK
                                              MAXWELL; CAPTAIN JACK
7                                             EWELL; SERGEANT SEAN BURKE;
                                              DEPUTY ANTHONY GEISBAEUER;
8                                             DEPUTY JUAN RODRIGUEZ;
9                                             DEPUTY EDSON SALAZAR;
                                              DEPUTY DONALD MCNAMARA;
10                                            DEPUTY STEVEN PRATT; DEPUTY
                                              IAN STADE; DEPUTY DANIEL
11                                            WELLE; AND DEPUTY JAMES
12                                            WHEELER
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**19**

# PROOF OF SERVICE

*Soares v. County of Los Angeles, et al.*
*USDC Case No.: 2:17-cv-00924*

I am employed in the City of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 3250 Wilshire Boulevard, Suite 708, Los Angeles, California 90010.

On **March 14, 2018,** I served the foregoing document described as: **ANSWER TO COMPLAINT OF DEFENDANTS COUNTY OF LOS ANGELES; SHERIFF JIM MCDONNELL; CAPTAIN JACK EWELL; SERGEANT SEAN BURKE; DEPUTY ANTHONY GEISBAEUER; DEPUTY JUAN RODRIQUEZ; DEPUTY EDSON SALAZAR; DEPUTY DONALD MCNAMARA; DEPUTY STEVEN PRATT; DEPUTY IAN STADE; DEPUTY DANIEL WELLE; AND DEPUTY WHEELER; DEMAND FOR JURY TRIAL,** to all interested parties in this action by a true and accurate copy thereof, enclosed in sealed envelopes, addressed as follows:

Tristan G. Pelayes, Esq.
Armanda J. Parker, Esq.
WAGNER & PELAYES, LLP
1325 Spruce Street, Suite 200
Riverside, CA 92507
Tel: (951) 686-4800
Fax: (951) 686-4081

*Attorney for Plaintiffs*

[X]  **BY ELECTRONIC E-FILING:** (IN COMPLIANCE WITH L.R.5-3-2.1) on **March 14, 2018,** at my place of business.

[X]  **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **March 14, 2018,** at Los Angeles, California.

_____/s/__Sara Justice_____
Sara Justice