# EXHIBIT B

Tristan G. Pelayes, Esq. (SBN: 206696)
Jacob P. Menicucci, Esq. (SBN: 305237)
WAGNER & PELAYES, LLP
1325 Spruce Street, Suite 200
Riverside, CA 92507
Telephone: (951) 686-4800
Fax:           (951) 686-4801

Attorneys for Plaintiffs

RECEIVED
JAN 0 4 2018
BY: _Sara_

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN SOARES, TIFFANY SOARES, et al., | CASE NO.: 2:17-cv-00924 RGK-AS |
| Plaintiff(s), | *Honorable R. Gary Klausner* |
| vs. | **PLAINTIFF ALISSA VARNEDOE'S RESPONSES TO DEFENDANT SHERIFF JIM MCDONNELL'S SPECIAL INTERROGATORIES-SET ONE** |
| COUNTY OF LOS ANGELES, SHERIFF JIM MCDONNELL, et al., | |
| Defendant(s). | |

**PROPOUNDING PARTY:**     Defendant SHERIFF JIM MCDONNELL

**RESPONDING PARTY:**     Plaintiff ALISSA VARNEDOE

**SET NUMBER:**     ONE

//

//

1

## PRELIMINARY STATEMENT

These Responses to plaintiffs' Request for Special Interrogatories are made solely for the purpose of this action. Each response is subject to all appropriate objections (including, but not necessarily limited to objections concerning competency, relevancy, materiality, propriety, and admissibility), which requires the exclusion of any statement contained herein if this demand for inspection of documents were asked of, or any statement made herein was made by a witness present and testifying in court. All such objections and grounds are reserved and may be interposed at time of trial.

Responding party has not fully completed its investigation of the facts relating to this case, has not completed discovery in this action, and has not completed preparation for trial. All of the responses contained herein are based only upon such information which is presently available and specifically known to the Responding Party.

Except for the explicit facts admitted herein, no admissions of any nature whatsoever are implied or should be inferred. The fact that any Special Interrogatory has been responded to should not be taken as admission or acceptance of existence of any facts set forth or assumed by such response or that such response constitutes admissible evidence.

The following Responses to Special Interrogatories are furnished without prejudice to the right of the Responding Party to provide supplemental or amended responses on any subsequently discovered fact or facts inadvertently overlooked.

At this time as far as known, the Responding Party responds as follows:

## RESPONSES TO SPECIAL INTERROGATORIES-SET ONE

## SPECIAL INTERROGATORIES NO. 1:

Identify with specificity any official policy, practice or custom of **DEFENDANT COUNTY OF LOS ANGELES** pursuant to which **YOU** contend

2

1  **DEFENDANTS** were acting at the time of the **INCIDENT**.

2  **RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

3      Plaintiffs allege Defendants grossly violated the 4th & 14th Amendment to

4  the U.S. Constitution as well as the training and standards involved in making

5  searches and seizures of subjects, and especially in using the "burn safe" device in

6  the manner described herein, which also violated standard training, established

7  legal precedent, and manufacturer guidelines concerning the use of the massive

8  gassing. These violations by Defendants caused Decedent's death.

9      Defendants, acting under color of law, and without due process of law

10 deprived Plaintiffs of their right to a familial relationship by seizing Decedent by

11 use of unreasonable, unjustified, and/or deadly force and violence, causing injuries

12 which resulted in Decedent's death, all without provocation and did attempt to

13 conceal their extraordinary use of force and hide the true cause of Decedent's

14 demise to deprive Plaintiffs of their right to seek redress, all in violation of rights,

15 privileges, and immunities secured by the Fourth and Fourteenth Amendments to

16 the United States Constitution.

17     Plaintiffs allege that high-ranking COUNTY OF LOS ANGELES officials,

18 including high ranking police supervisors such as Defendant MCDONNELL and

19 EWELL, knew and/or reasonably should have known about repeated acts of

20 misconduct by Defendants.

21     Despite having such notice, Plaintiffs allege that Defendants MCDONNELL

22 and EWELL approved, ratified, condoned, encouraged, sought to cover up, and/or

23 tacitly authorized the continuing pattern and practice of misconduct and/or civil

24 rights violations by said defendants. The LASD had a history of racial animus and

25 had been cited by the United States Department of Justice for the pattern of

26 aggressive, excessive force on African American and Section 8 Housing to African

27 Americans.

28

1    Specifically, Commander PATRICK MAXWELL had a history and
2    reputation at the Los Angeles County Sheriff's Department for using excessive
3    force against suspects. Commander PATRICK MAXWELL has been involved in
4    countless incidents of excessive force, including multiple incidents similar to here
5    where Deputies caused a barricaded suspect to be burned alive due to the use of
6    gas and other devices, such as road flares.  Despite PATRICK MAXWELL's
7    repeated use of excessive force, PATRICK MAXWELL was promoted and made
8    Commander at the Los Angeles County Sheriff's Department and given the duty to
9    formulate and implement SWAT plans and tactics.

10    Plaintiffs are further informed and believe and thereon allege that as a result
11    of the deliberate indifference, reckless and/or conscious disregard of the
12    misconduct by Commander PATRICK MAXWELL, Defendant, Commander
13    PATRICK MAXWELL, ratified and encouraged these officers to continue their
14    course of misconduct and caused these officers' lack of training, resulting in the
15    violation of the Plaintiffs' and Decedent's rights as alleged herein.

16    Plaintiffs further allege Defendants were on notice of Constitutional defects
17    in their training of COUNTY OF LOS ANGELES peace officers, including, but
18    not limited to, in the deployment, placement, use, and/or ignition of the smoke
19    grenade, responding to mentally impaired or intoxicated subjects, responding to
20    barricaded subjects, and in providing for medical care for subjects placed in harm
21    or jeopardy by the actions COUNTY OF LOS ANGELES peace officers.

22    The aforementioned acts and/or omissions and/or deliberate indifference by
23    high ranking COUNTY OF LOS ANGELES officials, including high ranking
24    COUNTY OF LOS ANGELES Sheriff's Department supervisors, Defendants
25    SHERIFF JIM MCDONNELL,  resulted in the deprivation of Plaintiffs' and
26    Decedents constitutional rights including, but not limited to, the following:

27

28

4

1          a.      The right to be free from unreasonable searches and

2    seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United

3    States Constitution;

4               b.      The right to a familial relationship, as guaranteed by the

5    Fourteenth Amendment to the United States Constitution.

6          Said rights are substantive guarantees under the Fourth and/or Fourteenth

7    Amendments to the United States Constitution.

8    **SPECIAL INTERROGATORY NO. 2:**

9          Identify all **DOCUMENTS** that support **YOUR** contention of the existence

10   of an official policy, practice or custom of **DEFENDANT COUNTY OF LOS**

11   **ANGELES** pursuant to which **DEFENDANTS** were acting at the time of the

12   **INCIDENT**.

13   **RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

14         Plaintiff objects to this request in that it is premature. Discovery is in its

15   infancy, and limited testimony has been taken in this case. Furthermore, defendants

16   have yet to fully produce its files, which are expected to contain the evidence that

17   will enable plaintiff to more fully support plaintiffs' contentions. Plaintiffs'

18   contentions are based on information and belief following review and analysis of

19   the information available prior to litigation and in consultation with expert

20   witnesses and/or consultants. Plaintiff is informed and believes that facts

21   supportive of the contentions in plaintiffs' complaint will become known as

22   discovery unfolds and testimony is taken.

23         Without waiving and subject to these objections, plaintiff responds: Plaintiff

24   identifies documents, photographs and audio and video recordings identified

25   and/or produced by defendants in their Rule 26 disclosure and supplemental

26   disclosure, as well as the LA DA's Report, photographs, the autopsy report of

27   decedent, as well as additional documents in defendants' possession, custody or

28

1  control not yet produced.

2  **SPECIAL INTERROGATORY NO. 3:**

3  State all facts upon which **YOU** base **YOUR** contention that **DEFENDANT**

4  **SHERIFF JIM McDONNELL** "was notified, and approved and ratified the plan

5  to throw in excess of fourteen (14) canisters of gas and a gas bomb into the house

6  where Decedent was residing to 'smoke' Decedent out from inside the residence"

7  as alleged in Paragraph 27 of the First Amended Complaint.

8  **RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

9  In connection with serving the search warrant on 46335 Gadsden Ave.,

10  Defendant CAPTAIN EWELL, a high-ranking Captain in the LOS ANGELES

11  County Sheriff's Department, determined that the Sheriff's Department

12  SWAT/SEB Team should be deployed to effect entry into the residence. Defendant

13  Commander PATRICK MAXWELL formulated, approved, ratified, and advised

14  Deputies of the plan and SHERIFF MCDONNELL was notified, and approved and

15  ratified the plan to throw in excess of fourteen (14) canisters of gas and a gas bomb

16  into the house where Decedent was residing to "smoke" Decedent out from inside

17  the residence. Knowing that throwing in excess of fourteen (14) canisters of gas

18  was likely to suffocate Decedent and spark a fire, PATRICK MAXWELL devised,

19  approved, and ratified the plan to throw the many gas canisters inside the home as

20  a way to intentionally harm Decedent. EWELL condoned and ratified the

21  excessive use of gas and unsafe incendiary devices, which he knew or should have

22  known would cause a fatal fire. Captain EWELL was also aware of Commander

23  MAXWELL's penchant and history of burning barricaded suspects to death by the

24  use of chemical agents and pyrotechnics but went along with the deadly plan

25  anyway. Sheriff MCDONNELL knew or should have known Commander

26  MAXWELL had a penchant and history of burning barricaded suspects as well.

27

28

1   **SPECIAL INTERROGATORY NO. 4:**

2       Identify all **DOCUMENTS** that support **YOUR** contention that

3   **DEFENDANT SHERIFF JIM McDONNELL** "was notified, approved and

4   ratified the plan to throw in excess of fourteen (14) canisters of gas and a gas bomb

5   into the house where Decedent was residing to 'smoke' Decedent out from inside

6   the residence" as alleged in Paragraph 27 of the First Amended Complaint.

7   **RESPONSE TO SPECIAL INTERROGATORY 4:**

8       Plaintiff objects to this request in that it is premature. Discovery is in its

9   infancy, and limited testimony has been taken in this case. Furthermore, defendants

10   have yet to fully produce its files, which are expected to contain the evidence that

11   will enable plaintiff to more fully support plaintiffs' contentions. Plaintiffs'

12   contentions are based on information and belief following review and analysis of

13   the information available prior to litigation and in consultation with expert

14   witnesses and/or consultants. Plaintiff is informed and believes that facts

15   supportive of the contentions in plaintiffs' complaint will become known as

16   discovery unfolds and testimony is taken.

17       Without waiving and subject to these objections, plaintiff responds: Plaintiff

18   identifies documents, photographs and audio and video recordings identified

19   and/or produced by defendants in their Rule 26 disclosure and supplemental

20   disclosure, as well as the LA DA's Report, photographs, the autopsy report of

21   decedent, as well as additional documents in defendants' possession, custody or

22   control not yet produced.

23   **SPECIAL INTERROGATORY NO. 5:**

24       State all facts upon which **YOU** base **YOUR** contention that **DEFENDANT**

25   **SHERIFF JIM McDONNELL** "knew or should have known Commander

26   MAXWELL had a penchant of burning barricaded suspects as well" as alleged in

27   Paragraph 27 of the First Amended Complaint.

28

7

**RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

In connection with serving the search warrant on 46335 Gadsden Ave., Defendant CAPTAIN EWELL, a high-ranking Captain in the LOS ANGELES County Sheriff's Department, determined that the Sheriff's Department SWAT/SEB Team should be deployed to effect entry into the residence. Defendant Commander PATRICK MAXWELL formulated, approved, ratified, and advised Deputies of the plan and SHERIFF MCDONNELL was notified, and approved and ratified the plan to throw in excess of fourteen (14) canisters of gas and a gas bomb into the house where Decedent was residing to "smoke" Decedent out from inside the residence. Knowing that throwing in excess of fourteen (14) canisters of gas was likely to suffocate Decedent and spark a fire, PATRICK MAXWELL devised, approved, and ratified the plan to throw the many gas canisters inside the home as a way to intentionally harm Decedent. EWELL condoned and ratified the excessive use of gas and unsafe incendiary devices, which he knew or should have known would cause a fatal fire. Captain EWELL was also aware of Commander MAXWELL's penchant and history of burning barricaded suspects to death by the use of chemical agents and pyrotechnics but went along with the deadly plan anyway. Sheriff MCDONNELL knew or should have known Commander MAXWELL had a penchant and history of burning barricaded suspects as well.

**SPECIAL INTERROGATORY NO. 6:**

Identify all **DOCUMENTS** that support **YOUR** contention that **DEFENDANT SHERIFF JIM McDONNELL** "knew or should have known Commander MAXWELL had a penchant of burning barricaded suspects as well" as alleged in Paragraph 27 of the First Amended Complaint.

**RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

Plaintiff objects to this request in that it is premature. Discovery is in its infancy, and limited testimony has been taken in this case. Furthermore, defendants

8

1  have yet to fully produce its files, which are expected to contain the evidence that
2  will enable plaintiff to more fully support plaintiffs' contentions. Plaintiffs'
3  contentions are based on information and belief following review and analysis of
4  the information available prior to litigation and in consultation with expert
5  witnesses and/or consultants. Plaintiff is informed and believes that facts
6  supportive of the contentions in plaintiffs' complaint will become known as
7  discovery unfolds and testimony is taken.

8        Without waiving and subject to these objections, plaintiff responds: Plaintiff
9  identifies documents, photographs and audio and video recordings identified
10  and/or produced by defendants in their Rule 26 disclosure and supplemental
11  disclosure, as well as the LA DA's Report, photographs, the autopsy report of
12  decedent, as well as additional documents in defendants' possession, custody or
13  control not yet produced.

14  **SPECIAL INTERROGATORY NO. 7:**

15        State all acts, omissions or evidence of deliberate indifference on the part of
16  **DEFENDANT SHERIFF JIM McDONNELL** which YOU contend resulted in
17  the deprivation of Plaintiffs' and/or Decedents' constitutional rights as alleged in
18  Paragraph 57 of the First Amended Complaint.

19  **RESPONSE TO SPECIAL INTEROGATORY NO. 7:**

20        Plaintiffs allege that high-ranking COUNTY OF LOS ANGELES officials,
21  including high ranking police supervisors such as Defendant MCDONNELL,
22  EWELL, knew and/or reasonably should have known about repeated acts of
23  misconduct by Defendants, and/or each of them.

24        Despite having such notice, Plaintiffs allege that Defendants
25  MCDONNELL, EWELL, and/or each of them, approved, ratified, condoned,
26  encouraged, sought to cover up, and/or tacitly authorized the continuing pattern
27  and practice of misconduct and/or civil rights violations by said defendants. The

28

9

1  LASD had a history of racial animus and had been cited by the United States

2  Department of Justice for the pattern of aggressive, excessive force on African

3  American and Section 8 Housing to African Americans.

4      Specifically, Commander PATRICK MAXWELL had a history and

5  reputation at the Los Angeles County Sheriff's Department for using excessive

6  force against suspects.  Commander PATRICK MAXWELL has been involved in

7  countless incidents of excessive force, including multiple incidents similar to here

8  where Deputies caused a barricaded suspect to be burned alive due to the use of

9  gas and other devices, such as road flares.  Despite PATRICK MAXWELL's

10 repeated use of excessive force, PATRICK MAXWELL was promoted and made

11 Commander at the Los Angeles County Sheriff's Department and given the duty to

12 formulate and implement SWAT plans and tactics.

13      Plaintiffs allege that as a result of the deliberate indifference, reckless and/or

14 conscious disregard of the misconduct by, Commander PATRICK MAXWELL,

15 Defendant, Commander PATRICK MAXWELL, ratified and encouraged these

16 officers to continue their course of misconduct and caused these officers' lack of

17 training, resulting in the violation of the Plaintiffs' and Decedent's rights as alleged

18 herein.

19      Plaintiffs further allege Defendants, were on notice of Constitutional defects

20 in their training of COUNTY OF LOS ANGELES peace officers, including, but

21 not limited to, in the deployment, placement, use, and/or ignition of the smoke

22 grenade, responding to mentally impaired or intoxicated subjects, responding to

23 barricaded subjects, and in providing for medical care for subjects placed in harm

24 or jeopardy by the actions COUNTY OF LOS ANGELES peace officers.

25      The aforementioned acts and/or omissions and/or deliberate indifference by

26 high ranking COUNTY OF LOS ANGELES officials, including high ranking

27 COUNTY OF LOS ANGELES Sheriff's Department supervisors, Defendants

28

1  SHERIFF JIM MCDONNELL resulted in the deprivation of Plaintiffs' and

2  Decedents constitutional rights including, but not limited to, the following:

3  a.    The right to be free from unreasonable searches and

4  seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United

5  States Constitution;

6  b.    The right to a familial relationship, as guaranteed by the

7  Fourteenth Amendment to the United States Constitution.

8  Said rights are substantive guarantees under the Fourth and/or Fourteenth

9  Amendments to the United States Constitution.

10 **SPECIAL INTERROGATORY NO. 8:**

11 Identify all **DOCUMENTS** that support **YOUR** contention that acts,

12 omissions or evidence of deliberate indifference on the part of **DEFENDANT**

13 **SHERIFF JIM McDONNELL** resulted in the deprivation of Plaintiffs' and/or

14 Decedents' constitutional rights as alleged in Paragraph 57 of the First Amended

15 Complaint.

16 **RESPONSE TO SPECIAL INTEROGATORY NO. 8:**

17 Plaintiff objects to this request in that it is premature. Discovery is in its

18 infancy, and limited testimony has been taken in this case. Furthermore, defendants

19 have yet to fully produce its files, which are expected to contain the evidence that

20 will enable plaintiff to more fully support plaintiffs' contentions. Plaintiffs'

21 contentions are based on information and belief following review and analysis of

22 the information available prior to litigation and in consultation with expert

23 witnesses and/or consultants. Plaintiff is informed and believes that facts

24 supportive of the contentions in plaintiffs' complaint will become known as

25 discovery unfolds and testimony is taken.

26 Without waiving and subject to these objections, plaintiff responds: Plaintiff

27 identifies documents, photographs and audio and video recordings identified

28

11

1  and/or produced by defendants in their Rule 26 disclosure and supplemental

2  disclosure, as well as the LA DA's Report, photographs, the autopsy report of

3  decedent, as well as additional documents in defendants' possession, custody or

4  control not yet produced.

5  **SPECIAL INTERROGATORY NO. 9:**

6         State all facts upon which **YOU** base **YOUR** contention that **DEFENDANT**

7  **PATRICK MAXWELL** "devised, approved, and ratified the plan to throw the

8  many gas canisters in the home as a way to intentionally harm Decedent" as

9  alleged in paragraph 27 of the First Amended Complaint.

10 **RESPONSE TO SPECIAL INTEROGATORY NO. 9:**

11        In connection with serving the search warrant on 46335 Gadsden Ave.,

12 Defendant CAPTAIN EWELL, a high-ranking Captain in the LOS ANGELES

13 County Sheriff's Department, determined that the Sheriff's Department

14 SWAT/SEB Team should be deployed to effect entry into the residence. Defendant

15 Commander PATRICK MAXWELL formulated, approved, ratified, and advised

16 Deputies of the plan and SHERIFF MCDONNELL was notified, and approved and

17 ratified the plan to throw in excess of fourteen (14) canisters of gas and a gas bomb

18 into the house where Decedent was residing to "smoke" Decedent out from inside

19 the residence.  Knowing that throwing in excess of fourteen (14) canisters of gas

20 was likely to suffocate Decedent and spark a fire, PATRICK MAXWELL devised,

21 approved, and ratified the plan to throw the many gas canisters inside the home as

22 a way to intentionally harm Decedent.  EWELL condoned and ratified the

23 excessive use of gas and unsafe incendiary devices, which he knew or should have

24 known would cause a fatal fire.  Captain EWELL was also aware of Commander

25 MAXWELL's penchant and history of burning barricaded suspects to death by the

26 use of chemical agents and pyrotechnics but went along with the deadly plan

27 anyway.  Sheriff MCDONNELL knew or should have known Commander

28

1   MAXWELL had a penchant and history of burning barricaded suspects as well.

2       The LASD SWAT team or SEB surrounded the house where Decedent was

3   staying. LASD sent a robot in the house. The robot did not detect the presence of

4   the Decedent in the house. Despite the lack of evidence that VARNEDOE was in

5   the house, the Defendants continued to carry out their highly dangerous plans.

6   Based on the statements of neighbors present at the scene, Defendants reasonably

7   believed Decedent was present inside the residence. Although Defendants were

8   informed that Decedent might be mentally impaired or intoxicated, they received

9   no indication that Decedent was a threat to himself or anyone else. Decedent did

10  not or was unable to communicate with Defendants. The Defendants never

11  provided a phone or mechanism by which the Decedent could have communicated

12  with law enforcement.

13      The on-scene leaders of this debacle, including PATRICK MAXWELL and

14  other Defendants, decided to order that a hot tear gas (euphemistically, somewhat

15  misleadingly, called a ""burn safe" device") be thrown inside and ignited in the

16  front living room where Decedent was residing. The interior of the living room

17  was visible to Defendants through a large window that faced out onto the street.

18  Furniture, including two couches and other flammable items were also visible

19  through the front living room.

20      Commander PATRICK MAXWELL ordered, condoned, and ratified

21  officers to throw the many gas devices inside the home knowing it would likely

22  start a fire and cause Decedent to be unable to exit his home.  In fact, Commander

23  PATRICK MAXWELL has implemented this tactic numerous times before and

24  similarly caused the death of others.

25      Commander PATRICK MAXWELL also knew that the "burn safe" device

26  used to deploy the chemical agents was an "after market" product that was

27  dangerous and caused fires.  Despite this knowledge, MAXWELL allowed this

28

13

1  device to be used even though he knew the company that manufactured this device

2  was owned and operated by a current member in his SWAT Team (Sgt. Thomas

3  Giandomenico) who was involved in this incident.

4       Based on his experience and knowledge of chemical agents, Commander

5  MAXWELL knew that the chemical agent used in this incident that caused this

6  fatal fire had explicit warnings from the manufacturer that it not be used indoors

7  due to the fact that it caused fires, yet he approved of its use anyway.

8       The reasoning of the on-scene Defendants for deploying in excess of

9  fourteen (14) canisters of tear gas in the residence was that they had previously

10  employed the gassing in the same manner and it had previously effectively

11  "smoked out" people who had been hiding inside buildings where they deployed

12  this type of firebomb. Thus, based on Defendant COUNTY's practice, and written

13  or unwritten policy, Defendants ordered the incendiary gas canister to be thrown

14  inside the residence, near multiple obvious fire hazards, with no immediate means

15  available to extinguish the bomb or fires it might set inside the residence, while

16  reasonably aware that at least one person, not believed to be armed or threatening,

17  was inside the residence, recalcitrant to law enforcement commands to exit the

18  residence, possibly impaired or under the influence, and likely to die should a fire

19  be set inside the residence.

20       In order to throw the gas inside the residence, Defendant Deputies broke the

21  front living room window, and Defendant Deputies threw the hot gas through the

22  broken window into the front living room, on or near the two obviously flammable

23  sofas. Any visual observation into the window of the front living room would have

24  disclosed obvious fire hazards noted herein. Although there was no indication

25  Decedent or anyone other than law enforcement was armed, Defendants used their

26  firearms to provide cover for the team that broke the window and put massive

27  amounts of gas inside the residence then placed the hot incendiary device inside.

28

1    The "gas plan," as devised, condoned, approved, and ratified by Commander
2    PATRICK MAXWELL, was initiated by LASD at 11:00 pm on February 5, 2015.
3    Massive amounts of gas were fired into the residence. Defendant DEPUTY
4    GEISBAUER tossed a ""burn safe"" gas. DEPUTY SALAZAR deployed a
5    tomahawk gas thrown through the southwest bedroom window and the bathroom
6    window. DEPUTY SALAZAR fired other rounds into the attic. DEPUTY
7    MCNAMARA fired three additional rounds into the attic. Defendant DEPUTY
8    RODRIQUEZ deployed a tomahawk through the window of the door on the north
9    side of the residence. During this outrageous and unwarranted gas attack,
10   Defendant SARGENT SEAN BURKE supervised and directed the attack.
11   Then, the Defendants simply waited. No one forced entry to ensure the
12   device did not set a fire. No one attempted to prevent the hot gas from igniting a
13   fire. No steps were taken in the placement of the hot gas to reduce or eliminate the
14   possibility of a fire being set by the device's ignition.
15   Defendants waited an extended period of time for the Fire Department
16   arrival. The delay wasn't because the Fire truck was a great distance from the
17   location, but because Defendants had blocked access to the Decedent and the
18   property.  By the time the Fire Department had the fire controlled, about an hour
19   later, Decedent was dead from smoke inhalation and other causes related to the
20   actions of the Defendants. He had been hiding in a crawlspace above the kitchen,
21   according to the location of his body. No weapon was found near the Decedent's
22   body.
23   Plaintiffs allege Defendants grossly violated the training and standards involved in
24   making reasonable searches and seizures of subjects, and especially in using the
25   tomahawk "burn safe" in the manner described herein, which also violated
26   standard training, established legal precedent, and manufacturer guidelines
27   concerning the use of the massive gassing. These violations by Defendants caused
28

15

1   Decedent's death.

2   **SPECIAL INTERROGATORY NO. 10:**

3       Identify all **DOCUMENTS** that support **YOUR** contention that

4   **DEFENDANT PATRICK MAXWELL** "devised, approved, and ratified the plan

5   to throw the many gas canisters in the home as a way to intentionally harm

6   Decedent" as alleged in paragraph 27 of the First Amended Complaint.

7   **RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

8       Plaintiff objects to this request in that it is premature. Discovery is in its

9   infancy, and limited testimony has been taken in this case. Furthermore, defendants

10  have yet to fully produce its files, which are expected to contain the evidence that

11  will enable plaintiff to more fully support plaintiffs' contentions. Plaintiffs'

12  contentions are based on information and belief following review and analysis of

13  the information available prior to litigation and in consultation with expert

14  witnesses and/or consultants. Plaintiff is informed and believes that facts

15  supportive of the contentions in plaintiffs' complaint will become known as

16  discovery unfolds and testimony is taken.

17      Without waiving and subject to these objections, plaintiff responds: Plaintiff

18  identifies documents, photographs and audio and video recordings identified

19  and/or produced by defendants in their Rule 26 disclosure and supplemental

20  disclosure, as well as the LA DA's Report, photographs, the autopsy report of

21  decedent, as well as additional documents in defendants' possession, custody or

22  control not yet produced.

23  **SPECIAL INTERROGATORY NO. 11:**

24      State all facts upon which **YOU** base **YOUR** contention that **DEFENDANT**

25  **"EWELL** condoned and ratified the excessive use of gas and unsafe incendiary

26  devices, which he knew or should have known would cause a fatal fire" as alleged

27  in Paragraph 27 of the First Amended Complaint.

28

**RESPONSE TO SPECIAL INTEROGATORY NO. 11:**

In connection with serving the search warrant on 46335 Gadsden Ave., Defendant CAPTAIN EWELL, a high-ranking Captain in the LOS ANGELES County Sheriff's Department, determined that the Sheriff's Department SWAT/SEB Team should be deployed to effect entry into the residence. Defendant Commander PATRICK MAXWELL formulated, approved, ratified, and advised Deputies of the plan and SHERIFF MCDONNELL was notified, and approved and ratified the plan to throw in excess of fourteen (14) canisters of gas and a gas bomb into the house where Decedent was residing to "smoke" Decedent out from inside the residence. Knowing that throwing in excess of fourteen (14) canisters of gas was likely to suffocate Decedent and spark a fire, PATRICK MAXWELL devised, approved, and ratified the plan to throw the many gas canisters inside the home as a way to intentionally harm Decedent. EWELL condoned and ratified the excessive use of gas and unsafe incendiary devices, which he knew or should have known would cause a fatal fire. Captain EWELL was also aware of Commander MAXWELL's penchant and history of burning barricaded suspects to death by the use of chemical agents and pyrotechnics but went along with the deadly plan anyway.

**SPECIAL INTEROGATORY NO. 12:**

Identify all **DOCUMENTS** that support **YOUR** contention DEFENDANT "EWELL condoned and ratified the excessive use of gas and unsafe incendiary devices, which he knew or should have known would cause a fatal fire" as alleged in Paragraph 27 of the First Amended Complaint.

**RESPONSE TO SPECIAL INTEROGATORY NO. 12:**

Plaintiff objects to this request in that it is premature. Discovery is in its infancy, and limited testimony has been taken in this case. Furthermore, defendants have yet to fully produce its files, which are expected to contain the evidence that

17

1  will enable plaintiff to more fully support plaintiffs' contentions. Plaintiffs'
2  contentions are based on information and belief following review and analysis of
3  the information available prior to litigation and in consultation with expert
4  witnesses and/or consultants. Plaintiff is informed and believes that facts
5  supportive of the contentions in plaintiffs' complaint will become known as
6  discovery unfolds and testimony is taken.

7        Without waiving and subject to these objections, plaintiff responds: Plaintiff
8  identifies documents, photographs and audio and video recordings identified
9  and/or produced by defendants in their Rule 26 disclosure and supplemental
10 disclosure, as well as the LA DA's Report, photographs, the autopsy report of
11 decedent, as well as additional documents in defendants' possession, custody or
12 control not yet produced.

13 **SPECIAL INTERROGATORY NO. 13:**

14       State all facts upon which YOU base YOUR contention that the Fire
15 Department was delayed in its arrival at 16335 Gadsden Avenue, Lancaster
16 "because Defendants had blocked access to the Decedent and the property" as
17 alleged in paragraph 38 of the First Amended Complaint.

18 **RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

19       Based on his experience and knowledge of chemical agents, Commander
20 MAXWELL knew that the chemical agent used in this incident that caused this
21 fatal fire had explicit warnings from the manufacturer that it not be used indoors
22 due to the fact that it caused fires, yet he approved of its use anyway.

23       The reasoning of the on-scene Defendants for deploying in excess of
24 fourteen (14) canisters of tear gas in the residence was that they had previously
25 employed the gassing in the same manner and it had previously effectively
26 "smoked out" people who had been hiding inside buildings where they deployed
27 this type of firebomb. Thus, based on Defendant COUNTY's practice, and written

28

1   or unwritten policy, Defendants ordered the incendiary gas canister to be thrown
2   inside the residence, near multiple obvious fire hazards, with no immediate means
3   available to extinguish the bomb or fires it might set inside the residence, while
4   reasonably aware that at least one person, not believed to be armed or threatening,
5   was inside the residence, recalcitrant to law enforcement commands to exit the
6   residence, possibly impaired or under the influence, and likely to die should a fire
7   be set inside the residence.

8           In order to throw the gas inside the residence, Defendant Deputies broke the
9   front living room window, and Defendant Deputies threw the hot gas through the
10  broken window into the front living room, on or near the two obviously flammable
11  sofas. Any visual observation into the window of the front living room would have
12  disclosed obvious fire hazards noted herein. Although there was no indication
13  Decedent or anyone other than law enforcement was armed, Defendants used their
14  firearms to provide cover for the team that broke the window and put massive
15  amounts of gas inside the residence then placed the hot incendiary device inside.
16  The "gas plan," as devised, condoned, approved, and ratified by Commander
17  PATRICK MAXWELL, was initiated by LASD at 11:00 pm on February 5, 2015.
18  Massive amounts of gas were fired into the residence. Defendant DEPUTY
19  GEISBAUER tossed a ""burn safe"" gas. DEPUTY SALAZAR deployed a
20  tomahawk gas thrown through the southwest bedroom window and the bathroom
21  window. DEPUTY SALAZAR fired other rounds into the attic. DEPUTY
22  MCNAMARA fired three additional rounds into the attic. Defendant DEPUTY
23  RODRIQUEZ deployed a tomahawk through the window of the door on the north
24  side of the residence. During this outrageous and unwarranted gas attack,
25  Defendant SARGENT SEAN BURKE supervised and directed the attack.

26          Defendant DEPUTY PRATT, Defendant DEPUTY STADE and Defendant
27  DEPUTY WHEELER assisted the other named defendants in the tactical
28

19

1  operations and carrying out the gas attack of the residence.

2  Then, the Defendants simply waited. No one forced entry to ensure the device did

3  not set a fire. No one attempted to prevent the hot gas from igniting a fire. No steps

4  were taken in the placement of the hot gas to reduce or eliminate the possibility of

5  a fire being set by the device's ignition.

6      Defendants waited an extended period of time for the Fire Department

7  arrival. The delay wasn't because the Fire truck was a great distance from the

8  location, but because Defendants had blocked access to the Decedent and the

9  property.  By the time the Fire Department had the fire controlled, about an hour

10  later, Decedent was dead from smoke inhalation and other causes related to the

11  actions of the Defendants. He had been hiding in a crawlspace above the kitchen,

12  according to the location of his body. No weapon was found near the Decedent's

13  body.

14      Plaintiffs allege Defendants grossly violated the training and standards

15  involved in making reasonable searches and seizures of subjects, and especially in

16  using the tomahawk "burn safe" in the manner described herein, which also

17  violated standard training, established legal precedent, and manufacturer guidelines

18  concerning the use of the massive gassing. These violations by Defendants caused

19  Decedent's death.

20  **SPECIAL INTERROGATORY NO. 14:**

21      Identify all DOCUMENTS that support YOUR contention the Fire

22  Department was delayed in its arrival at 16335 Gadsden Avenue, Lancaster

23  "because Defendants had blocked access to the Decedent and the property" as

24  alleged in Paragraph 38 of the First Amended Complaint.

25  **RESPONSE TO SPECIAL INTEROGATORY NO. 14:**

26      Plaintiff objects to this request in that it is premature. Discovery is in its

27  infancy, and limited testimony has been taken in this case. Furthermore, defendants

28

1   have yet to fully produce its files, which are expected to contain the evidence that

2   will enable plaintiff to more fully support plaintiffs' contentions. Plaintiffs'

3   contentions are based on information and belief following review and analysis of

4   the information available prior to litigation and in consultation with expert

5   witnesses and/or consultants. Plaintiff is informed and believes that facts

6   supportive of the contentions in plaintiffs' complaint will become known as

7   discovery unfolds and testimony is taken.

8        Without waiving and subject to these objections, plaintiff responds: Plaintiff

9   identifies documents, photographs and audio and video recordings identified

10  and/or produced by defendants in their Rule 26 disclosure and supplemental

11  disclosure, as well as the LA DA's Report, photographs, the autopsy report of

12  decedent, as well as additional documents in defendants' possession, custody or

13  control not yet produced.

14  **SPECIAL INTERROGATORY NO. 15:**

15       State all facts upon which **YOU** base **YOUR** contention that "Defendants

16  grossly violated the training and standards involved in making reasonable searches

17  and seizures of subjects, and especially in using the tomahawk "burn safe" as

18  alleged in Paragraph 39 of the First Amended Complaint.

19  **RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

20       Based on his experience and knowledge of chemical agents, Commander

21  MAXWELL knew that the chemical agent used in this incident that caused this

22  fatal fire had explicit warnings from the manufacturer that it not be used indoors

23  due to the fact that it caused fires, yet he approved of its use anyway.

24       The reasoning of the on-scene Defendants for deploying in excess of

25  fourteen (14) canisters of tear gas in the residence was that they had previously

26  employed the gassing in the same manner and it had previously effectively

27  "smoked out" people who had been hiding inside buildings where they deployed

28

1   this type of firebomb. Thus, based on Defendant COUNTY's practice, and written

2   or unwritten policy, Defendants ordered the incendiary gas canister to be thrown

3   inside the residence, near multiple obvious fire hazards, with no immediate means

4   available to extinguish the bomb or fires it might set inside the residence, while

5   reasonably aware that at least one person, not believed to be armed or threatening,

6   was inside the residence, recalcitrant to law enforcement commands to exit the

7   residence, possibly impaired or under the influence, and likely to die should a fire

8   be set inside the residence.

9       In order to throw the gas inside the residence, Defendant Deputies broke the

10  front living room window, and Defendant Deputies threw the hot gas through the

11  broken window into the front living room, on or near the two obviously flammable

12  sofas. Any visual observation into the window of the front living room would have

13  disclosed obvious fire hazards noted herein. Although there was no indication

14  Decedent or anyone other than law enforcement was armed, Defendants used their

15  firearms to provide cover for the team that broke the window and put massive

16  amounts of gas inside the residence then placed the hot incendiary device inside.

17  The "gas plan," as devised, condoned, approved, and ratified by Commander

18  PATRICK MAXWELL, was initiated by LASD at 11:00 pm on February 5, 2015.

19  Massive amounts of gas were fired into the residence. Defendant DEPUTY

20  GEISBAUER tossed a ""burn safe"" gas. DEPUTY SALAZAR deployed a

21  tomahawk gas thrown through the southwest bedroom window and the bathroom

22  window. DEPUTY SALAZAR fired other rounds into the attic. DEPUTY

23  MCNAMARA fired three additional rounds into the attic. Defendant DEPUTY

24  RODRIQUEZ deployed a tomahawk through the window of the door on the north

25  side of the residence. During this outrageous and unwarranted gas attack,

26  Defendant SARGENT SEAN BURKE supervised and directed the attack.

27      Defendant DEPUTY PRATT, Defendant DEPUTY STADE and Defendant

28

22

1   DEPUTY WHEELER assisted the other named defendants in the tactical

2   operations and carrying out the gas attack of the residence.

3   Then, the Defendants simply waited. No one forced entry to ensure the device did

4   not set a fire. No one attempted to prevent the hot gas from igniting a fire. No steps

5   were taken in the placement of the hot gas to reduce or eliminate the possibility of

6   a fire being set by the device's ignition.

7        Defendants waited an extended period of time for the Fire Department

8   arrival. The delay wasn't because the Fire truck was a great distance from the

9   location, but because Defendants had blocked access to the Decedent and the

10  property.  By the time the Fire Department had the fire controlled, about an hour

11  later, Decedent was dead from smoke inhalation and other causes related to the

12  actions of the Defendants. He had been hiding in a crawlspace above the kitchen,

13  according to the location of his body. No weapon was found near the Decedent's

14  body.

15       Plaintiffs allege Defendants grossly violated the training and standards

16  involved in making reasonable searches and seizures of subjects, and especially in

17  using the "burn safe" in the manner described herein, which also violated standard

18  training, established legal precedent, and manufacturer guidelines concerning the

19  use of the massive gassing. These violations by Defendants caused Decedent's

20  death.

21  **SPECIAL INTERROGATORY NO. 16:**

22       Identify all **DOCUMENTS** that support **YOUR** contention "Defendants

23  grossly violated the training and standards involved in making reasonable searches

24  and seizures of subjects, and especially in using the tomahawk "burn safe" as

25  alleged in Paragraph 39 of the First Amended Complaint.

26

27

28

1   **RESPONSE TO SPECIAL INTEROGATORY NO. 16:**

2        Plaintiff objects to this request in that it is premature. Discovery is in its

3   infancy, and limited testimony has been taken in this case. Furthermore, defendants

4   have yet to fully produce its files, which are expected to contain the evidence that

5   will enable plaintiff to more fully support plaintiffs' contentions. Plaintiffs'

6   contentions are based on information and belief following review and analysis of

7   the information available prior to litigation and in consultation with expert

8   witnesses and/or consultants. Plaintiff is informed and believes that facts

9   supportive of the contentions in plaintiffs' complaint will become known as

10  discovery unfolds and testimony is taken.

11       Without waiving and subject to these objections, plaintiff responds: Plaintiff

12  identifies documents, photographs and audio and video recordings identified

13  and/or produced by defendants in their Rule 26 disclosure and supplemental

14  disclosure, as well as the LA DA's Report, photographs, the autopsy report of

15  decedent, as well as additional documents in defendants' possession, custody or

16  control not yet produced.

17

18  Dated: January 2, 2017                WAGNER & PELAYES, LLP

19

20

21                                       TRISTAN G. PELAYES, ESQ.

22                                       JACOB P. MENICUCCI, ESQ.
                                         Attorneys for Plaintiffs

23

24

25

26

27

28

## VERIFICATION

State of California, County of Los Angeles

I have read the foregoing PLAINTIFF ALISSA VARNEDOE'S RESPONSES TO DEFENDANT SHERIFF JIM MCDONNELL'S SPECIAL INTERROGATORIES-SET ONE and know its contents.

I am a party to this action. The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed on this _31_ day of December 2017 in Los Angeles, California.

ALISSA VARNEDOE

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA    )

3

                        ) ss:

COUNTY OF RIVERSIDE    )

4

    I, the undersigned, declare:

5

    I am employed in the County of Riverside, State of California.  I am over the

6

age of 18 years and not a party to this action; my business address is 1325 Spruce
Street, Suite 200, Riverside, California 92507.

7

    On the date written below, I served the document named below on the parties

8

indicated below, in the following manner:

9

☒ **(By Mail)** I am familiar with this office's practice for the collection and

10

processing of documents for mailing with the United States Postal Service.
The documents are deposited with the United States Postal Service on the same
day in the ordinary course of business.  I placed a true copy of the document

11

thereof in a sealed envelope and caused said document(s) to be delivered in
this manner.

12

**DOCUMENT:**        **PLAINTIFF ALISSA VARNEDOE'S RESPONSES TO**

13

                       **DEFENDANT SHERIFF JIM MCDONNELL'S**

14

                       **SPECIAL INTERROGATORIES-SET ONE**

15

**PARTIES SERVED:**

16

Harold G. Becks, Esq.            *Attorneys for Defendants*

17

Douglas L. Day, Esq.
Ronald S. Housman, Esq.

18

3250 Wilshire Blvd., Suite 708

19

Los Angeles, CA 90010
Phone: (213) 385-9852

20

Fax: (213) 385-1370

21

dougday@beckslaw.com

22

☒ **(FEDERAL)** I declare under penalty of perjury that I am employed in the

23

office of a member of the bar of this court at whose direction the service was
made.

24

    Executed on January 2, 2018 at Riverside, California.

25

26

                       Yolanda Serrano, Declarant

27

28

PLAINTIFF ALISSA VARNEDOE'S RESPONSES TO DEFENDANT SHERIFF JIM MCDONNELL'S
SPECIAL INTERROGATORIES – SET ONE